IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> POSITEC USA INC. and RW DIRECT, INC. <br><br> Defendants. | Case No. 1:11-cv-05426 <br><br> Judge Robert M. Dow, Jr. <br> Magistrate-Judge Geraldine Soat Brown |

**BLACK & DECKER'S RESPONSE TO DEFENDANTS' MOTION TO RECONSIDER**

**I.       INTRODUCTION**

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006).  Defendants' motion to reconsider cannot meet this standard. ***Defendants cite no new facts or case law in their motion, and merely reprise the same arguments that this Court's 77-page decision carefully considered and rejected.*** Indeed, this Court thoroughly addressed *Qualitex*, *Landscape Forms* and *Yurman Design*, the same cases cited again by Defendants on reconsideration.  (Opinion at pp. 55-56).

Worse, Defendants rely upon a complete misapplication of law. Defendants' position was wrong the first time and remains so one year later. Their motion to reconsider should be denied.

**II.      DEFENDANTS IGNORE THE EXACTING STANDARDS
         FOR RECONSIDERATION**

This Court has frequently recognized the rigorous standard a movant must satisfy to warrant reconsideration:

> It is well established that '[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'

> *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the 'manifest error' prong, the Seventh Circuit has explained that a motion to reconsider is proper only when 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.' *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)…And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been 'a controlling or significant change in the law or facts since the submission of the issue to the Court.' *Bank of Waunakee*, 906 F.2d at 1191. Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration 'rarely arise and the motion to reconsider should be equally rare.' *Bank of Waunakee*, 906 F.2d at 1191.

*General Cas. v. U.S. Govt.*, 13-CV-5596, 2014 WL 4269096, at *1 (N.D. Ill. Aug. 28, 2014) (Dow, J.); *see also Rodriguez v. City of Chicago*, 09 C 04436, 2012 WL 4795702, at *1 (N.D. Ill. Oct. 9, 2012) (Dow, J.).

In this case, Defendants "do not invoke a change of law or the availability of new facts; thus, the Court's consideration is limited to whether the Court previously committed 'manifest error.'" *Ortiz v. City of Chicago*, 09-CV-2636, 2011 WL 1897187, at *1 (N.D. Ill. May 18, 2011). Further, "[i]n performing this analysis, the Court [must] keep[] in mind that '[r]econsideration is not an appropriate forum for rehashing previously rejected arguments.'" *Id.* (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). As the Seventh Circuit has explained, "[a] 'manifest error' is not demonstrated by the disappointment of the losing party," but is instead "the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'". *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Defendants simply express the disappointment of the losing party, failing to demonstrate that the Court misapprehended controlling precedent. There is no basis for reconsideration.

### III. FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2014, Defendants filed a motion for summary judgment dealing with every conceivable aspect of Black & Decker's trade dress claim. (*See* Dkt. Nos. 65 – 65-1). For example, Defendants requested summary judgment on the following: (1) definition of Plaintiffs' trade dress; (2) secondary meaning; (3) likelihood of confusion; (4) functionality; (5) actual damages; and (6) damages prior to formal notice.

It is notable that Defendants have *not* moved for reconsideration on (2) – (6) above, thus conceding the existence of genuine issues of material fact on each of those issues. Defendants' decision in this regard is understandable given the manner in which their products are sold (below), as well as the mountain of additional evidence Black & Decker presented in its summary judgement response:





(Opinion at pp. 25, 32) (*See* Dkt. No. 74, Plaintiffs' Statement of Additional Facts ¶¶ 37-76).

### IV. THE COLOR COMBINATION YELLOW AND BLACK CAN BE PROTECTABLE, UNREGISTERED TRADE DRESS UNDER THE LAW

#### a. The Supreme Court's *Qualitex* Decision

Defendants misstate the Supreme Court's *Qualitex* decision, accusing this Court of having "misinterpreted" and "misconstrued" the holding in that case. (Mot. to Reconsider at pp. 1-2). Defendants contend that *Qualitex* requires dismissal of all color trade dress claims unless they are "specific both as to the color used and the location of the usage on the product" because the Supreme Court allegedly "provided examples that utilized color in specific product locations." (Mot. to Reconsider at p. 3). The actual holding of *Qualitex* is that when a color meets the "ordinary legal trademark requirements" of secondary meaning and non-functionality, then "no special legal rule prevents color alone from serving as a trademark." Q*ualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 160-166 (1995) ("We cannot find in the basic objectives of trademark law any obvious theoretical objection to the use of color alone as a trademark, where that color has attained 'secondary meaning' and therefore identifies and distinguishes a particular brand (and thus indicates its 'source')."). No conceivable interpretation of *Qualitex* supports Defendants' argument about color "locations" on a product.

Tellingly, Defendants did not cite a single case that followed their impossible reading of *Qualitex*, while Black & Decker has cited (post-*Qualitex*) decisions that afford trademark protection for unregistered color combinations, without meeting Defendants' fictitious "specific location" requirement. *See*, *e.g.*, *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 851, 856 (E.D. Va. 1998) ("A color combination and even a color alone can create an enforceable trademark if it 'has attained 'secondary meaning' and therefore identifies and distinguishes a particular brand,'" citing *Qualitex,* 514 U.S. at 163; specifically holding that "the

- 4 -

yellow and black color scheme on the DeWalt line achieved secondary meaning…by May, 1992" and "[t]hat the DeWalt colors currently enjoy secondary meaning is beyond debate.").

Also fatal to Defendants' motion to reconsider is that Black & Decker is relying upon its consistent use of the yellow and black color combination across its *family* of hundreds of DeWalt power tools, accessories and associated packaging sold throughout the United States for decades. (*See* Ex. A; Ex. B, Rakowsky 10/21/13 Dep. at 12-14).  As held in Defendants' own case law and quoted in this Court's summary judgment Opinion at page 56, "***a claim of trade dress covering an array of items is likely to be broader than one for an individual product's design***." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) (emphasis added).  Thus, even accepting Defendants' argument that the yellow and black colors must appear on specific locations of a particular DeWalt product (when viewing just one of the products in isolation), Defendants cannot dispute that the common trade dress when viewing the "array" of DeWalt products is the "broader" description of "yellow and black."  And, it is the yellow and black color combination that relevant consumers broadly associate with DeWalt/Black & Decker, thereby creating a genuine issue of fact on secondary meaning that Defendants do not challenge on reconsideration. (*See*, *e.g.*, Opinion at p. 68, holding that a reasonable trier of fact could find that "Plaintiffs have a strong trade dress" and that "the yellow and black color combination has acquired secondary meaning…"; *see also* Opinion at p. 31, referencing Berger Survey B which shows an extremely high level of association of "yellow and black" with Plaintiffs' array of products, regardless of the specific location of those colors on a specific product or package).

Under Defendants' suggested approach, Black & Decker at trial would need to take several hundred DeWalt products (see three examples below) and detail the "specific locations" of the yellow colors and black colors as placed on each of the various parts for every DeWalt product ever made:



(*See* Ex. A). According to Defendants, this is necessary for the Court, the jury and "competitors such as Positec" to understand "Black & Decker's claimed trade dress as-implemented on a variety of goods." (Mot. to Reconsider at p. 7). Nonsense. Defendants have created an unworkable and illogical standard that has absolutely no support in the case law. So, too, for Defendants' "zebra stripes" and "black triangles" argument because Black & Decker is not claiming "the exclusive right to use a particular color in any fashion whatsoever," (Mot. to Reconsider at p. 3), but rather is seeking to prevent the use of a yellow and black color combination on power tools, accessories and packaging ***only in a manner which is likely to cause confusion***, nothing more.

### b. The Supreme Court's *Wal-Mart* Decision

Defendants also misstate another Supreme Court holding, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000). Specifically, Defendants quote *Wal-Mart* that "the ***general principles*** qualifying a mark for registration under § 2 of the Lanham Act are ***for the most part*** applicable in determining whether an unregistered mark is entitled to protection under §43(a)." *Id.* at 210 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)) (emphasis added). The "general principles" to which the Supreme Court refers, however, is that an unregistered mark must have inherent distinctiveness or secondary meaning to be protectable. *Wal-Mart*, 529 U.S. at 210-11. This is precisely how the Seventh Circuit applies the *Wal-Mart* and *Two Pesos*

decisions. In *Dunn v. Gull*, 990 F.2d 348 (7th Cir. 1993), for example, the Seventh Circuit discussed the Supreme Court's *Two Pesos* analysis of Section 43(a), and held that:

> The elements determining statutory trademark protection are: 1) validity of the mark; and 2) infringement. The first element, validity of the mark, is determined by whether the mark identifies and distinguishes particular goods and services to the public. A plaintiff may establish this by showing that the symbol is inherently distinctive or, if not inherently distinctive, that the symbol has become distinctive by acquiring a secondary meaning…Under sections 2(e) and 2(f) of the Lanham Act, if a descriptive mark acquires secondary meaning by distinguishing itself from the applicant's goods in commerce, this would constitute secondary meaning, fulfilling the distinctiveness prong.

*Id.* at 351; *see also AT&T Corp. v. Synet, Inc.*, 96 C 0110, 1997 WL 89228, at *4 (N.D. Ill. Feb. 11, 1997) ("Whether an unregistered mark is entitled to protection is generally determined by the principles that govern whether a mark qualifies for registration under the Act. A plaintiff may make this showing by proving that a mark is either 'inherently distinctive' or has become distinctive by acquiring a secondary meaning.") (citations omitted); *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, 06 C 4634, 2006 WL 4013750, at *15 (N.D. Ill. Oct. 6, 2006) ("To merit protection for its unregistered trade dress, [plaintiff] must show that it is distinctive and not functional.").

Defendants change the *Wal-Mart* quote from "general principles" and "for the most part," *Wal-Mart*, 529 U.S. at 210, to "exact" statutory requirements of registration, "including but not limited to 37 C.F.R. §2.52(b)(1)." (Mot. to Reconsider at p. 7). Of course neither logic nor the law requires an unregistered mark under §43(a) to meet the exact standards of trademark registration under the specific provisions of 37 C.F.R. §2.52(b)(1), and this Court already rejected Defendants' similar argument with respect to the notice requirement for registered marks. (Opinion at p. 76: "First, the plain language of § 1111 makes clear that it only applies to registered trademarks. If Congress wanted the provision to apply to unregistered marks, it could have said so. Second, Defendants cite no authority in support of their argument, and, as Defendants acknowledge, there is a good deal of authority to the contrary."). Once again, Defendants failed

to cite a single decision in the last 30 years since *Two Pesos* that applied such a standard. To the contrary, the Supreme Court in *Two Pesos* explicitly recognized that "Section 43(a) 'prohibits a broader range of practices than does §32,' which applies to registered marks." 505 U.S. at 768 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 858 (1982)). Still further, Defendants again ignore the fact that this case involves a ***family of products and packaging***, not just one particular product or trademark registration in isolation.[1]

## V. BLACK AND DECKER PROPERLY ARTICULATED THE ELEMENTS OF ITS ASSERTED TRADE DRESS UNDER THE SECOND CIRCUIT DECISIONS RELIED UPON BY DEFENDANTS

Defendants make the same argument, already considered and rejected by this Court, that Black & Decker's entire trade dress claim should be summarily dismissed without a trial because the elements "yellow and black" are not specific enough under the Second Circuit cases *Yurman Design* and *Landscape Forms*.

Aside from the fact that neither of those decisions involved trade dress in a color or color combination, both *Yurman Design* and *Landscape Forms* simply present specific illustrations where the identified trade dress was far too vague to warrant protection. That hardly renders this Court's well-reasoned summary judgment decision incorrect, let alone demonstrating a manifest disregard of the controlling law in this Court.

In *Yurman Design, Inc. v PAJ, Inc.,* 262 F.3d 101 (2d Cir. 2001), the plaintiff identified its trade dress as "the ***artistic*** combination of cable [jewelry] ***with other elements.***" *Id.* at 117 (emphasis added). The Second Circuit found that using the word "artistic" to define a particular

---

[1] Plaintiffs have, in fact, received numerous individual federal trademark registrations on specific yellow and black tools, but here Plaintiffs are asserting broader rights across the entire array of DeWalt products.

trade dress simply begs the question, and the vague phrase "with other elements" is "altogether too broad to be a protectable, source-identifying expression." *Id.* at 117-18.

Likewise, in *Landscape Forms*, the plaintiff defined the trade dress with "laudatory descriptions" such as "furniture which is at once massive, yet appears to float" having a "very heavy structure that sort of lets the elements float inside" with "kind of a floating feel." 113 F.3d at 381-82. The Second Circuit held that this definition was "too abstract to qualify as trade dress." *Id.* at 382. As this Court correctly found, Black & Decker's description of its trade dress is "far more specific" than the abstract, laudatory language in *Yurman Design* and *Landscape Forms*. (Opinion at p. 56).

In addition, *Yurman Design* and *Landscape Forms* involved alleged trade dress in a product configuration, raising the level of specification required to afford protection: "trade dress protection for [a] product design…entails a greater risk of impinging on ideas as compared with protection of packaging or labeling," so courts exercise "particular 'caution,' when extending protection to product designs." *Yurman Design*, 262 F.3d at 114, 116; *Landscape Forms*, 113 F.3d at 380 ("[G]ranting trade dress protection to an ordinary product design would create a monopoly in the goods themselves."). Here, from a trade dress standpoint, Defendants are free to make and sell any power tool product with any conceivable product configuration – they just have to use a different color scheme.

Defendants' request for summary dismissal here is not even supported by their own recycled case law. The notion that this Court's original decision somehow constitutes a manifest disregard of the law borders on the frivolous.

## VI. CONCLUSION

Defendants' motion fails to meet the exacting standard for reconsideration and should be denied.

Respectfully submitted,

*/s/ Raymond P. Niro, Jr.*
Raymond P. Niro, Jr.
Kyle D. Wallenberg
NIRO McANDREWS, LLC
200 W. Madison, Suite 2040
Chicago, IL 60606
(312) 755-8575
Fax: (312) 674-7481
rnirojr@niro-mcandrews.com
kwallenberg@niro-mcandrews.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 1, 2015 the foregoing

**<u>BLACK & DECKER'S RESPONSE TO DEFENDANTS' MOTION TO RECONSIDER</u>**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

| | |
|---|---|
| J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 S. Riverside Plaza, 22nd Fl.<br>Chicago, IL 60606<br>aron.carnahan@huschblackwell.com | Henry S. Alford<br>Scot A. Duvall<br>Robert J. Theuerkauf<br>MIDDLETON REUTLINGER<br>401 S. Fourth Street<br>2500 Brown & Williamson Tower<br>Louisville, KY 40202<br>HAlford@MiddletonLaw.com<br>SDuvall@MiddletonLaw.com<br>RJT@MiddletonLaw.com |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

                                */s/ Raymond P. Niro, Jr.*
                                Attorney for Plaintiffs
                                NIRO McANDREWS, LLC