# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 11-cv-5426 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| POSITEC USA INC. and RW DIRECT INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs and Defendants are competing power tool manufacturers. Plaintiffs allege, in part, that Defendants infringed their unregistered trade dress in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). They describe their trade dress as a yellow and black color combination appearing on their power tools, power tool accessories, and associated packaging. On motion for partial summary judgment [65], Defendants argued that this description was insufficiently precise as a matter of law. The Court rejected this argument in its March 31, 2015 Opinion and Order [93]. Defendants now move for reconsideration [97]. For the reasons stated below, the Court denies Defendants' motion.

## I. Background

Plaintiffs introduced the DeWalt line of power tools in 1992. They allege trade dress rights in a yellow and black color combination appearing on DeWalt's power tools, power tool accessories, and packaging. Defendants allegedly violated Plaintiffs' trade dress infringement by using yellow and black color schemes on their own products. On motion for partial summary

judgment, Defendants argued that Plaintiffs' description of its trade dress was insufficiently precise to constitute a legally cognizable trade dress, and the Court rejected their argument.

Although the Seventh Circuit has not directly addressed the issue, other circuits have imposed an articulation requirement, requiring plaintiffs to describe the specific elements of their trade dress. See, *e.g.*, *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) ("it is the plaintiff's duty to articulat[e] the specific elements which comprise its distinct dress.") (citation and quotation marks omitted); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) ("the discrete elements which make up that combination should be separated out and identified in a list * * * * Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market") (quoting 1 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:3 (4th ed. 2001); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001) ("a plaintiff asserting that a trade dress protects an entire line of different products must articulate the specific common elements sought to be protected"). Meanwhile, the Supreme Court has held that protectable trademarks may consist of a color that has acquired secondary meaning. *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163 (1995) (finding that trademark law protected Qualitex's use of a green-gold color on its press pads). Viewing the articulation requirement alongside *Qualitex Co.*, the Court concluded that, to the extent that an articulation requirement exists, Plaintiffs' description satisfied it. Defendants move the Court to reconsider.

## II.    Legal Standard

A district court has inherent authority to reconsider its own orders entered prior to final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district

judge"); *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562-63 (7th Cir. 1982) (interlocutory orders may be "reconsidered and reviewed at any time prior to final judgment") (citation and internal quotation marks omitted); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable") (Cudahy, J., concurring).

It is well-established that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). A motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation and internal quotation marks omitted). It is also appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (citation and internal quotation marks omitted). Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.* (citation and internal quotation marks omitted).

## III. Analysis

Defendants argue that Plaintiffs' trade dress description is insufficient because it fails to articulate how the yellow and black color combination appears on the products and packaging—meaning, in what locations and in what form. As an initial matter, the Court notes that the crux of Defendants' motion targets Plaintiffs' verbal description of its trade dress: a yellow and black color combination appearing on power tools, power tool accessories, and their packaging. The Court, however, does not consider Plaintiffs' verbal description in a vacuum. Applying a

practical, common sense approach attentive to the realities of litigation, the Court considers Plaintiffs' verbal description alongside the photographs in Plaintiffs' responses to Defendants' motion for partial summary judgment and motion for reconsideration. See *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2014 WL 7366578, at \*35 (S.D. Ind. Dec. 24, 2014) (finding that even though the plaintiffs' description was not "a model of explanatory precision or of consistency," it was "detailed enough, and enough in sync with the visual evidence \* \* \* to be readily identifiable"). A picture is often worth a thousand words, and in this case, Plaintiffs have provided many pictures. Their photographs consistently show power tools, accessories and packaging that are predominantly solid yellow and/or black, with "DeWALT" written in a particular font and printed either in yellow on a black background or black or a yellow background. See, *e.g.*, [109-1]. Thus, the question here is not whether Plaintiffs' verbal articulation, examined in isolation, is insufficiently precise. It is whether Plaintiffs' verbal description, examined in light of the photographs it has submitted, is so imprecise that it fails to articulate a legally cognizable trade dress.

Defendants argue that, taken together, *Qualitex* and *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000), require Plaintiffs' to verbally describe their trade dress in more detail. The Court is unpersuaded, as neither *Qualitex* nor *Wal-Mart* directly addressed whether there is an articulation requirement and, if so, what degree of specificity it requires. Instead, the two cases respectively addressed the protectability of color and product design. In *Qualitex*, the Supreme Court addressed a claim brought by a manufacturer of green-gold press pads. When the defendant began selling similarly-colored press pads, Qualitex brought an unfair competition claim under the Lanham Act. It then obtained a trademark registration and added a trademark infringement count. The trademark registration at issue described the mark as "a particular shade of green-gold applied to the top and side surfaces of the goods." U.S. Registration 1633711,

registered Feb. 5, 1991. The question before the Supreme Court was whether the Lanham Act

"permits the registration of a trademark that consists, purely and simply, of a color." *Qualitex*,

514 U.S. at 160-61. The Court held that, where a color had developed secondary meaning and

was therefore source-identifying, the answer was yes. *Id.* at 174.

Defendants correctly note that Qualitex's articulation of its trade dress is distinguishable

from Plaintiffs' in that it described not only a color but also its location on a product. But

Qualitex's description is not dispositive of whether Plaintiffs have sufficiently articulated their

own trade dress for two reasons. First, *Qualitex* did not directly address whether an articulation

requirement exists, let alone establish a test that governs it or the sufficiency of Qualitex's

description measured against such a test. In fact, it hardly analyzed the factual particularities of

the registration before it at all. Rather, it addressed a general legal question: whether a registered

trademark could consist purely and simply of a color. Second, while Qualitex's articulation

likely exceeds any degree of specificity that may be required, the Supreme Court's decision in no

way suggests that Qualitex's description marks the minimum degree of specificity required.

The Court is similarly unpersuaded by Plaintiff's citation to *Wal-Mart*. *Wal-Mart*

addressed a question not at issue here: "under what circumstances a product's design is

distinctive, and therefore protectible, in an action for infringement of unregistered trade dress."

*Wal-Mart*, 529 U.S. at 207. Finding *Qualitex*'s analysis of color applicable to product design by

analogy, the Supreme Court held that product design is distinctive and therefore protectable only

upon a showing of secondary meaning. *Id.* at 210. Nothing in this holding or the Court's

reasoning persuades the Court to find Plaintiffs' articulation insufficient as a matter of law.

Defendants also cite a line of three Second Circuit cases—*Jeffrey Milstein, Inc. v.*

*Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995), *Landscape Forms, Inc. v. Columbia*

*Cascade Co.*, 113 F.3d 373 (2d Cir. 1997), and *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101,

117 (2d Cir. 2001)—none of which warrant a change in the Court's opinion. In *Jeffrey Milstein*, the Second Circuit declined to extend protection to a trade dress related to a line of greeting cards, the front panel of which was cut to the outline of a color photograph using a die-cutting technique. The plaintiff described the trade dress as "straight-on, strong photographic, glossy images of animals, persons or objects on die-cut cards that are cut without bleed of any kind"— an articulation that the Second Circuit rejected as overly broad. *Id.* at 33. On first glance, *Jeffrey Milstein* appears to weigh in Defendants' favor, as the articulation there appears to be more detailed than the articulation here. A more thorough examination of the Second Circuit's reasoning, however, leads to a different conclusion. The Court rejected the plaintiff's articulation because, in claiming the "general idea of creating cards out of die-cut photographs," the plaintiff effectively claimed all die-cut photographic designs, *Jeffrey Milstein*, 58 F.3d at 33; in protecting a general idea, as opposed to its concrete expression, it claimed the "'genus of which the particular product is a species.'" *Id.* at 33 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). In other words, the Second Circuit rejected the plaintiff's trade dress because it sought to protect a general manufacturing methodology rather than a specific impression created by a product's visual components. The Court cautioned that "although trade dress law may supplement copyright and patent law by protecting unpatentable product configurations and novel marketing techniques, overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas." *Id.* at 32 (internal citation omitted). The Court emphasized that caution was necessary particularly because trademark law creates monopolies of unlimited duration, unlike patent law, which limits competition for a finite time period.

Plaintiffs' trade dress is distinguishable insofar as it does not implicate the same concerns. Instead of protecting an abstract idea or a manufacturing methodology, it claims the

visual impression created by a concrete combination of colors applied to power tools, power tool accessories, and packaging. In doing so, it does not exclude competitors from selling functionally similar products. Theoretically, Defendants could manufacture identical products without violating Plaintiff's trade dress, as long as they used different colors. The anti-competitive concerns in *Jeffrey Milstein* therefore are inapposite.

*Landscape Forms* also is distinguishable in that it focused on similar dangers arising when manufacturers who are unable to obtain a design patent use trademark law to monopolize industrial design. The trade dress at issue related to a line of outdoor furniture described as "at once massive, yet appears to float." *Landscape Forms*, 113 F.3d at 381. In deciding whether the plaintiff's description was overly broad, the Second Circuit emphasized the need for "particular caution.'" *Id.* at 380 (quoting *Jeffrey Milstein*, 58 F.3d at 32). Granting the plaintiff trade dress protection would create a monopoly, not in a source-identifying word or phrase, but "in the goods themselves." *Landscape Forms*, 113 F.3d at 380. Such protection, in turn, could inhibit competition among furniture designers and manufacturers. *Id.* The Court identified a second factor counseling caution: the fact that the trade dress covered not a single product but an entire line of products. Specifically, the Court reasoned that a claim for the overall look of an entire line of furniture "is likely to be broader than one for an individual product's design," again threatening competition. *Id.* Third, the Court emphasized that a specific description of a trade dress was necessary to facilitate a court's evaluation of liability and creation of narrowly-tailored injunctive relief. *Id.* at 381. With these concerns in mind, the Second Circuit found that the proffered description was "too abstract to qualify as trade dress for the reasons discussed in *Jeffrey Milstein*," noting by analogy that if "the law protected style at such a level of abstraction,

Braque might have prevented Picasso from selling cubist paintings in the United States." *Id.* at 381-82.[1]

Like the concerns driving *Jeffrey Milstein*, the policies underpinning *Landscape Forms* do not persuade the Court to conclude at the summary judgment stage that Plaintiffs' articulation is overly broad. Plaintiffs' claim would not threaten competition among power tool manufacturers. By claiming furniture that is "at once massive, yet appears to float," Landscape Forms sought to protect an aesthetic style amenable to subjective interpretation; the scope of its trade dress was dangerously broad because it was inherently ambiguous. In contrast, Plaintiffs claim a specific combination of two objectively identifiable colors. Again, competitors theoretically could manufacture the same tools and accessories in different colors without violating Plaintiff's alleged trade dress. Lastly, the objectively identifiable nature of these two colors sufficiently facilitates the Court's evaluation of liability and shaping of potential injunctive relief.[2] Trial may further refine the description of Plaintiffs' trade dress, as the evidence may throw into sharper relief the visual components that create the overall look of Plaintiffs' products and packaging.

---

[1] Less relevant here, the Second Circuit also rejected the plaintiffs' articulation because it was inconsistently presented throughout the litigation and because it applied to some but not all of the furniture in the line. See *id.* at 381-82.

[2] Relevant to potential injunctive relief, Defendants contend that Plaintiffs' description is so broad that it could cover "*any and all* uses of yellow and black in *any* manner on power tools, power tool accessories, and related packaging" based on Plaintiffs' articulation of its trade dress. [97] at 4 (emphasis added). They argue, for example, that Plaintiffs' trade dress "could include yellow and black zebra stripes, black triangles appearing on a yellow background, a solid black tool with yellow wording, and every other conceivable usage appearing on such products and related packaging." *Id.* However, as the Court previously noted, the scope of Plaintiffs' alleged trade dress is coextensive with the photographs attached to its motions and whatever evidence it may present at trial. Accordingly, should injunctive relief prove warranted, the Court need not—and in all likelihood would not—grant an injunction prohibiting the use of "*any and all* uses of yellow and black *in any manner* on power tools, accessories, and packaging," as such an injunction would extend well beyond the scope of the trade dress visually depicted by Plaintiffs.

Defendants' reliance on *Yurman Design* also is unpersuasive. The plaintiff there entirely failed to articulate any elements of its trade dress before the district court. "Pressed on appeal," it described its trade dress relating to an 18-piece line of jewelry as "the artistic combination of cable [jewelry] with other elements." *Id.* at 117. The Second Circuit found this articulation "too broad to be a protectable, source-identifying expression" based on the word "artistic," which "simply begs a question" and the phrase "other elements." *Id.* at 117-18. Key to its reasoning were the policies discussed in *Jeffrey Milstein* and *Landscape Forms*. The Second Circuit added that the articulation requirement serves another important purpose: it gives competitors adequate notice of the claimed property. See *Yurman*, 262 F.3d at 101 ("if a court is unable to identify what types of designs will infringe a trade dress, how is a competitor in the jewelry business to know what *new* designs would be subject to challenge by Yurman?").

Again, Plaintiffs' trade dress is distinguishable. Unlike the word "artistic," yellow and black do not simply beg questions, nor do they easily "degenerate into a question of quality, or beauty, or cachet." *Id.* at 117. The color combination instead "allows the court to evaluate the claimed trade dress within the realm of tangible reality rather than that of guesswork or abstract aesthetic speculation." *Heckler & Koch*, 2014 WL 7366578, at \*35. For the same reason, it puts Defendants on notice of the alleged trade dress.

Defendants also move for reconsideration based on the USPTO's registration requirements, which provide that if a "mark includes color, the drawing must show the mark in color, and the applicant must name the color(s), describe where the color(s) appear on the mark, and submit a claim that the color(s) is a feature of the mark." 37 C.F.R. § 2.52(b)(1). Again, the Court is unpersuaded. This action is not an attempt to register a trademark with the USPTO. It is an action brought before an Article III court, alleging infringement of an *un*registered trademark. It is true that the "'the general principles qualifying a mark for registration under § 2

9

of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).'" *Wal-Mart*, 529 U.S. at 210 (quoting *Two Pesos*, 505 U.S. at 768). However, application of these "general principles" entails locating a mark or trade dress along the spectrum of distinctiveness, see *Two Pesos*, 505 U.S. at 768-69; *Wal-Mart Stores, Inc.*, 529 U.S. at 210-216, not imposing the USPTO's detailed registration requirements in litigation. Applying these requirements would not only create role confusion between the USPTO and the courts—two different institutions with very different sets of expertise—but it would also begin to collapse the difference between the Lanham Act's separate causes of action for registered and unregistered trademarks or trade dresses.

Defendants also cite 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:40 (4th ed. 2001), which suggests that a seller cannot claim "what could be called a 'floating color': that is, a color per se, divorced from the coloration of a specific product or container. To the author's knowledge, no court has granted a company the exclusive right to use a color per se, apart from being defined as the coloration of a specific product, shape or design." *Id.* But Plaintiffs do not claim yellow and black divorced from any object. They claim yellow and black applied to the power tools, accessories and packaging depicted in their visual evidence.

Lastly, courts and the USPTO have protected similarly articulated trade dresses involving colors in numerous instances. See, *e.g.*, *Yellow Cab Transit Co. v. Louisville Taxicab & Transfer Co.*, 147 F.2d 407 (6th Cir. 1945) (protecting a cab company's trade dress, which consisted of yellow cars with black trimming and black fenders that depicted the company's trade names); *Transp., Inc. v. Mayflower Servs., Inc.*, 769 F.2d 952, 954 (4th Cir. 1985) (affirming an injunction prohibiting a defendant tax company "from using any red and black combination on its cabs."); *Eastman Kodak Co. v. Royal-Pioneer Paper Box Mfg. Co.*, 197 F. Supp. 132, 133 (E.D. Pa. 1961) (granting *Kodak* an injunction for a trade dress consisting of a "a predominant

yellow background, with red or black or both colors, with distinctive printing, often used in association with its various registered trade and service names and marks such as KODAK, KODACHROME, etc."); *Eastman Kodak Co. v. Fotomat Corp.*, 317 F. Supp. 304, 307 (N.D. Ga. 1969) (similarly granting injunctive relief to *Kodak*, which described its trade dress as a "predominantly yellow background with red or black, sometimes accompanied by accent colors in conjunction with one or more KODAK trade marks (sic)"); U.S. Registration 2131693, registered Jan. 27, 1998 (describing UPS's trademark as "the color brown applied to the vehicles used in performing the services," those services being described as "motor vehicle transportation and delivery of personal property"); U.S. Registration 2416794, registered Jan. 2, 2001 (describing Tiffany's mark as "a shade of blue often referred to as robin's-egg blue which is used on catalog covers").

## IV.    Conclusion

For the reasons stated above, the Court denies Defendants' motion for reconsideration [97].


Dated: July 10, 2015

_____
Robert M. Dow, Jr.
United States District Judge