# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE BLACK & DECKER ) | |
| CORPORATION, ) | |
| BLACK & DECKER INC. and BLACK ) | Case No. 11-cv-5426 |
| & DECKER (U.S.) INC., ) | |
| ) | Judge Robert M. Dow, Jr. |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| POSITEC USA INC. and ) | |
| RW DIRECT INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The parties are competing power tool sellers. Plaintiffs allege that Defendants infringed (1) their patents in certain power tool devices and (2) their trademark-related rights in the yellow-and-black color combination appearing on Plaintiffs' products and packaging.[1] Plaintiffs request a jury trial as to all claims. Defendants move to strike Plaintiffs' jury demand as to their trademark-related claims for Defendants' profits. For the reasons stated below, the Court respectfully denies Defendants' motion [99].

**I.  Analysis**

Under Federal Rule of Civil Procedure 38(a), "there is a right to a jury trial where either the Seventh Amendment or an ordinary statute of the United States so requires." *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). Where a district court

---

[1] More specifically, Plaintiffs' trademark-related claims allege trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition, false designation of origin, and trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125; and common law trademark infringement and unfair competition. See Am. Compl., [50], Counts II through VI. The Court granted Defendants' motion for summary judgment as to Count V, which alleged trademark dilution in violation of Section 43(iii) of the Lanham Act, 15 U.S.C. § 1125(c). [93].

applies "the substantive law of a state, federal procedural law controls the question of whether there is a right to a jury trial." *Id.* Thus, in a case like this, where Plaintiffs bring parallel state and federal trademark-related claims, the question is whether the Lanham Act or the Seventh Amendment creates a jury right.

### A. Statutory Right to a Jury Trial

To avoid the constitutional question if possible,[2] the Court begins with a question that neither side has addressed: whether the Lanham Act creates a right to a jury trial on a claim for a defendant's profits. Relevant here is § 1117, which provides:

> **(a) Profits; damages and costs; attorney fees**
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C.A. § 1117 (a).

The plain language of the statute, which states that a court "shall assess such profits and damages *or cause the same to be assessed under its direction*," at least suggests the possibility of

---

[2] See *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." (internal citation omitted)).

a jury determination in the first instance, even if a court may adjust the jury award as it "shall find to be just." 15 U.S.C. § 1117(a) (emphasis added). The statute "treats both profits and damages together, making no separate provision for the manner in which profits are calculated," at least suggesting that a right to a jury determination may exist as to both profits and damages. *Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998). Moreover, as Judge Weisberg explained, "[t]hat profits were combined with damages in Section 1117 into a single monetary recovery which constitutes 'compensation', rather than included in Section 1116, the section authorizing injunctions, suggests that Congress considered an award of profits more in the nature of damages than as incidental to equitable relief." *Oxford Indus., Inc. v. Hartmarx Corp.*, 1990 WL 65792, at *7 (N.D. Ill. May 2, 1990).

That said, other cases have indicated that the Lanham Act does not create a jury right. In *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), the Supreme Court addressed whether plaintiffs requesting a trademark infringer's profits had a right to a jury trial. The complaint was ambiguous in that it arguably alleged breach of a trademark license, trademark infringement, or both. *Id.* at 476–77. The Supreme Court held that the plaintiffs had a Seventh Amendment jury right as to their demand for an accounting of the defendant's profits, reasoning that the complaint's request for an accounting was "wholly legal in its nature," regardless of whether the complaint was construed to allege a breach of contract, trademark infringement, or both. *Id.* at 477. The Court did not address, as an initial matter, whether a statutory right existed. Given the well-settled constitutional avoidance doctrine, see *Nw. Austin Mun. Util. Dist. No. One*, 557 U.S. at 205, the fact that the Court resolved *Dairy Queen* on constitutional grounds at least suggests that it did not believe a statutory right to a jury trial existed. Since then, lower courts addressing

the issue have found no statutory jury right. Although the analysis in these cases is not robust,[3] this Court is hesitant to find a statutory right to a jury trial given *Dairy Queen*'s reasoning. Accordingly, the Court turns to address whether a jury right exists under the Seventh Amendment.

B.     **Constitutional Right to a Jury Trial**

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. This amendment does not create the right to a trial by jury. Rather, it generally "preserves the substance of the right to a jury trial which existed under English common law when the amendment was adopted." *Rogers v. Loether*, 467 F.2d 1110, 1113 (7th Cir. 1972).

Courts apply a two-prong test to determine whether the Seventh Amendment preserves a right to a jury. "First, we must 'compare the * * * action to 18th-century actions brought in the

---

[3] In *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65 (1st Cir. 2008), the First Circuit concluded that "[u]nder the reasoning of the Supreme Court's opinion in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 (1998), construing similar phraseology in the Copyright Act, it seems clear that the Lanham Act itself does not create a right to a jury trial whenever the remedy of an accounting of defendant's profits is sought." *Id.* at 78. But the statute at issue in *Feltner* did not include the language in § 1117, providing that a court "shall assess such profits and damages *or cause the same to be assessed under its direction*." 15 U.S.C. § 1117(a) (emphasis added). *Ideal World Mktg.* also stated that "the Act does not specifically provide for trial by jury," without citing authority for that conclusion. 997 F. Supp. at 336. It then offers analysis to the contrary, noting that the language "or cause the same to be assessed under its direction," 15 U.S.C. § 1117(a), "suggests strongly that, like damages, the actual calculation of profits should be made by the jury," particularly because "the statute treats both profits and damages together, making no separate provision for the manner in which profits are calculated." *Id.* at 339. *Oxford Industries* also concluded that § 1117 does not create a jury right since, regardless of whether the court assesses profits or damages or causes either to be assessed under its direction, the Court may adjust the monetary relief. 1990 WL 65792, at *4. However, it also noted the following to the contrary: "That profits were combined with damages in Section 1117 into a single monetary recovery which constitutes 'compensation', rather than included in Section 1116, the section authorizing injunctions, suggests that Congress considered an award of profits more in the nature of damages than as incidental to equitable relief." *Id.* at *7.

4

courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.' The latter inquiry is more important than the former." *Int'l Fin. Servs.*, 356 F.3d at 735 (quoting *Tull v. United States,* 481 U.S. 412, 417–18 (1987)). "Where history does not provide a clear answer, we look to precedent and functional considerations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999). Lastly, where an action involves both legal and equitable issues, a right to a jury exists as to the legal issues. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959) ("[O]nly under the most imperative circumstances * * * can the right to a jury trial of legal issues be lost through prior determination of equitable claims."). Thus, the ultimate unit of analysis is "the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

Defendants move to strike Plaintiffs' request for a jury trial on their trademark-related claims for Defendants' profits. They do not move to strike Plaintiffs' request for a jury trial on their patent claims for monetary relief, nor do the parties dispute that the remaining requests for injunctive relief are equitable issues to be decided by the Court. Thus, the only issue is whether Plaintiffs have a right to a jury trial on their trademark-related claims for Defendants' profits.

Applying the two-prong historical test to this issue, the Court arrives at an inconclusive result. The history of trademark actions and remedies lies in the murky overlap of law and equity. As one district court cogently explained,

> Trademark law draws on principles developed both at law and in equity. See *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 364 (6th Cir. 1985). Although in England and the United States, both equity and law courts were empowered to decide trademark cases, most suits for trademark infringement were brought in equity "because injunctive relief was generally considered the first and most effective step for courts to take in redressing a trademark infringement," *id.* (citing F. Schechter, *The Historical Foundations of the Law Relating to Trademarks*, at 122–145 (1925)), and because courts of equity were additionally empowered to award damages or profits as incidental relief. See

5

> *Oxford Indus.*, 1990 WL 65792 (citing G. Ropski, *The Federal Trademark Jury Trial—Awakening of a Dormant Constitutional Right*, 70 Trademark Rep. 177, 179–180 (1980)); see also 1 Pomeroy's Equity Jurisprudence § 181, at 257–258 (Symons 5th ed. 1941).

*Ideal World Mktg.*, 997 F. Supp. at 336–37.[4]

Because "history does not provide a clear answer," the Court turns to "precedent and functional considerations." *City of Monterey*, 526 U.S. at 718. Key here is *Dairy Queen*. Also important is the Seventh Circuit's explanation of the purposes for an accounting. Although an accounting is a "typical" example of equitable relief, *Int'l Fin. Servs.*, 356 F.3d at 736, an accounting in the context of a trademark infringement case may be based on three rationales: "unjust enrichment, deterrence, and compensation." *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989); accord *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994). As to the last rationale, courts in this circuit and others have accepted the proposition that profits may function as a "proxy for damages." *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994).[5] In fact, Plaintiffs here claim profits as a proxy for damages.

---

[4] For further explanation of the mixed legal and equitable history of trademark actions and remedies, see *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537–38 (2d Cir. 1992); *Daisy Grp., Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998); Thurmon, *supra*, 27–69; see also *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 755–56 (7th Cir. 1994) (explaining the mixed legal–equitable history of restitution); 9 Charles A. Wright & Arthur Miller, FED. PRAC. & PROC. CIV. § 2310 (3d ed.) (explaining the mixed legal–equitable history of an accounting).

[5] See also *Mowry v. Whitney*, 81 U.S. 620, 653 (1871) ("The profits which are recoverable against an infringer of a patent are in fact a compensation for the injury the patentee has sustained from the invasion of his right. They are the measure of his damages. Though called profits, they are really damages"); *Dairy Queen*, 369 U.S. at 476 (characterizing an accounting for profits as an "unquestionably legal" action for damages, regardless of whether the complaint was construed to allege a breach of contract, trademark infringement, or both); *George Basch*, 968 F.2d at 1539 ("Historically, an award of defendant's profits has also served as a rough proxy measure of plaintiff's damages."); *Visible Sys.*, 551 F.3d at 79 ("This circuit, like others, has recognized three rationales for awarding to the plaintiff an accounting of the defendant's profits: '(1) as a rough measure of the harm to plaintiff; (2) to avoid unjust enrichment of the defendant; or (3) if necessary to protect the plaintiff by deterring a willful infringer from further infringement.'"); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980) (noting that "[s]ome courts view the award of an accounting as simply a means of compensating a markholder for loss or diverted sales" without expressly adopting that view]); Restatement (First) of Torts § 747 (1938)

Courts allow parties to pursue an award of profits as a proxy for damages because of the evidentiary barriers to proving damages. To prove trademark infringement, a plaintiff must prove a likelihood of confusion. But to recover damages, a plaintiff additionally must establish "actual confusion" that caused "actual injury, i.e., a loss of sales, profits, or present value (goodwill)." *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204–05 (7th Cir. 1990).[6] As one court in this district explained,

> [u]nless he can show diversion of sales, a trademark owner will be hard pressed to prove damages, and even if he shows [1] [actual] confusion of the marks and [2] diversion of customers it is difficult to show how many customers bought the infringer's product who would have bought the trademark owner's but for the deception. (Few purchasers of cheap "knockoffs" of expensive goods would have bought the genuine article.) The damage caused by the dilution of the owner's goodwill when the infringer's goods are of inferior quality is virtually impossible to quantify. At least in some circumstances the infringer's profits may be a rough measure of the owner's damages, and an award of profits affords some compensation to the trademark owner.

*Oxford Indus.*, 1990 WL 65792, at *7.[7]

With *Dairy Queen* and the three rationales in the backdrop, courts have disagreed over whether a plaintiff demanding an infringer's profits has a Seventh Amendment right to a jury. The case law roughly falls into three categories. The first category generally interprets *Dairy Queen* to hold that, where a plaintiff demands an infringer's profits, a right to a jury trial exists

---

(Courts historically awarded profits "as an equivalent or substitute for legal damages when equity jurisdiction was properly invoked for injunctive relief.").

[6] See also *Roulo*, 886 F.2d at 941 ("Where plaintiff seeks an award of damages, plaintiff must show that defendant's infringement caused those losses.").

[7] See also *George Basch*, 968 F.2d at 1539 ("Due to the inherent difficulty in isolating the causation behind diverted sales and injured reputation, damages from trademark or trade dress infringement are often hard to establish.") (collecting cases noting the same); *Ideal World Mktg.*, 997 F. Supp. at 338 ("[A] consideration of the relevant case law indicates that an award of profits has largely served a remedial function in trademark cases, designed to compensate plaintiffs for diverted sales and to address the difficulties of proof inherent in such cases."); *Daisy*, 999 F. Supp. at 552 (noting that profits may be "an alternative measure of damages because of the difficulty of proving actual lost sales.").

regardless of the theory behind profits.[8] A second line of cases suggests that a jury right may exist depending on the theory of profits; where profits are a proxy for damages, a jury right exists, but where profits are premised on unjust enrichment, a jury right does not exist.[9] The third group continues to characterize disgorgement as equitable, and some of these cases distinguish *Dairy Queen* on the ground that it involved contract damages.[10] If either the first or

---

[8] See, *e.g.*, *Ideal World Mktg.*, 997 F. Supp. at 339 (interpreting *Dairy Queen* to mean that a jury right exists regardless of which theory applies because the constitutional right to a jury trial cannot depend on "subtle distinctions" between rationales); *Grove Fresh Distribs., Inc. v. New England Apple Prods. Co.*, 1991 WL 3928, at *3 (N.D. Ill. Jan. 11, 1991) (reading *Dairy Queen* to hold generally that "an accounting is a legal claim for damages" and to dismiss the historical exception that applied where accounts were too complicated for a jury); *Oxford Indus.*, 1990 WL 65792, at *5 (suggesting little practical difference between profits premised on damages versus unjust enrichment; reasoning that, either way, "a claim for a trademark infringer's profits is more analogous to a suit for damages than one for restitution"; and finding that an infringement action for profits created a right to a jury); see also *Kennedy v. Lakso Co.*, 414 F.2d 1249, 1252–54 (3d Cir. 1969) (stating even more broadly that regardless of whether a plaintiff requests an infringer's damages or profits, a jury right exists unless the determination will be too complicated for a jury).

[9] See, *e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977) (finding that where a plaintiff's request for a copyright infringer's profits was "'basically a money claim for damages,'" a jury right existed under *Dairy Queen* (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 411 (5th Cir. 1964) (same in patent infringement context))); *SPSS, Inc. v. Nie*, 2009 WL 2579232, at *3 (N.D. Ill. Aug. 19, 2009) (finding that the evidence did not show how profits could be a surrogate for damages, that the applicable theory was unjust enrichment, that the remedy was therefore equitable, and that the plaintiff therefore had no jury right); *Simon Prop. Grp., L.P. v. mySimon, Inc.*, 2001 WL 66408, at *22 (S.D. Ind. Jan. 24, 2001) (Hamilton, J.) (noting prior jury instructions stating that "one measure of damages for infringement under federal trademark law was the amount of defendant's profits attributable to use of the infringing marks."); *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203, 209 (S.D.N.Y. 2000) (finding a claim for profits based on unjust enrichment equitable); *Daisy*, 999 F. Supp. at 552 ("Whether a profits remedy is more legal than equitable in nature depends on which of these theories provides the basis for the requested profits award"; profits premised on damages or deterrence create a right to a jury, but profits based on unjust enrichment do not); *NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 422 (D. Minn. 1994) ("Actions which pursue an accounting for *damages* under Section 1117, can be—under the ordinary application of the *Dairy Queen* principle—presented to a Jury." (emphasis added)); *Merriam-Webster, Inc. v. Random House, Inc.*, 1993 WL 205043, at *2–3 (S.D.N.Y. June 10, 1993) (an unjust enrichment claim for an infringer's profits is equitable and does not create a jury right); *Am. Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784, 789 (D.N.J. 1986) (finding no jury right where a plaintiff's theory is unjust enrichment rather than damages).

[10] See, *e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) (ruling that a "claim for disgorgement of profits under § 1117(a) is equitable, not legal" and reasoning that *Dairy Queen* "does not broadly hold that a Lanham Act claim for disgorgement of profits is a legal claim. Rather, the Supreme Court characterizes the *Dairy Queen* claim as a legal claim for damages (not

second view is correct, then Plaintiffs have a jury right (assuming that their theory of profits as a proxy for damages has evidentiary support—a question which the Court addresses further below).

Neither the Supreme Court nor the Seventh Circuit has addressed which interpretation is correct, so the Court begins with the Supreme Court's guidance that, where the historical Seventh Amendment analysis is unclear, "we look to precedent and functional considerations." *City of Monterey*, 526 U.S. at 718. As to precedent, the weight of authority supports the first or second view more than the third. Consistent with these views, numerous courts in this circuit have tried demands for profits before juries.[11] As to function, the Seventh Circuit has stated clearly that profits may function as a "proxy for damages," *BASF*, 41 F.3d at 1096; see also *Roulo*, 886 F.2d at 941, a consideration supporting at least the second view. Also supporting the second view is the Seventh Circuit's decision in a trademark case to affirm a jury award that it

---

disgorgement of profits"); *G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 888 F. Supp. 44, 46 (S.D.N.Y. 1995) ("Defendants cite *Dairy Queen* * * * for the proposition that an accounting of profits can be a legal remedy. However * * * the *Dairy Queen* Court based its decision on the fact that the predominant claim was for breach of contract and not for equitable relief.") (citation and internal quotation marks omitted); *Coca-Cola v. Cahill*, 330 F. Supp. 354, 355 (W.D. Okla. 1971) (distinguishing itself from Dairy Queen because the parties "had no contractual relationship. Plaintiff's claim is not for damages for breach of a contract entered into between them.").

[11] See, *e.g.*, *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2005 WL 293512, at *1 (N.D. Ill. Feb. 8, 2005) (jury awarded profits based on unjust enrichment); *Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 2004 WL 5129997, at *3 (N.D. Ill. Dec. 15, 2004) (jury awarded a plaintiff the trademark infringer's profits); *Simon Prop.*, 2001 WL 66408 (Hamilton, J.) ("The court instructed the jury, pursuant to evidence on damages offered by SPG, that one measure of damages for infringement under federal trademark law was the amount of defendant's profits attributable to use of the infringing marks."); *Hot Wax, Inc. v. S/S Car Care*, 1999 WL 966094, at *7 (N.D. Ill. Oct. 14, 1999) (declining to overturn a jury award of profits); *Morton v. Planet Hollywood (Chicago)*, 1993 WL 4137, at *2 (N.D. Ill. Jan. 4, 1993) ("Plaintiffs are entitled to a jury trial on their claim for an accounting under the Lanham Act."); *Grove Fresh Distribs.*, 1991 WL 3928, at *3 (denying a motion to strike a plaintiff's jury demand for recovery of defendants' profits); *Oxford Indus.*, 1990 WL 65792, at *7 (finding a right to a jury where a plaintiff requested a trademark infringer's profits); *Roulo v. Russ Berrie & Co.*, 1988 WL 64094, at *1 (N.D. Ill. June 10, 1988) (indicating a jury award of a copyright and trade dress infringer's profits); *Quality Care-USA, Inc. v. Gorenstein Enters., Inc.*, 1987 WL 27307, at *2 (N.D. Ill. Dec. 9, 1987) (declining to overturn a jury award attributable to a trademark infringer's profits).

interchangeably characterized as "damages" and "profits" and described as corresponding with the plaintiff's "loss of business." *Grove Fresh*, 969 F.2d at 554–58, 560.

It bears mentioning that the Seventh Circuit has provided some indications supporting the even broader first view. The Seventh Circuit's pattern jury instructions, for example, explain that "[i]n addition to Plaintiff's damages, Plaintiff may recover the profits Defendant gained from the [trademark infringement; trade dress infringement; false advertising]. You may not, however, include in any award of profits any amount that you took into account in determining actual damages." Federal Civil Jury Instructions of the Seventh Circuit, 13.6.4 Defendant's Profit (2009 rev.). These instructions state that profits exceeding actual damages—which logically must be based on unjust enrichment or deterrence—may be tried before a jury. Consistent with this view, the Seventh Circuit has affirmed a jury award of profits that was "appropriate under either a deterrence or unjust enrichment theory even if plaintiff's actual sustained losses may have been less." *Roulo*, 886 F.2d at 941.[12] For these reasons, the Court finds that both the first and second views described above are more persuasive than the third view. The Court further notes that to the extent that the law is ambiguous, any doubts should be resolved in favor of finding a constitutional jury right, as the "federal policy favoring jury trials is of historic and continuing strength," *Simler v. Conner*, 372 U.S. 221, 222 (1963) (collecting cases, including *Dairy Queen*), and the risk of error is greater when denying rather than recognizing a constitutional right.

---

[12] On initial glance, this case appears consistent with the third category, in that it involved trademark infringement in the context of a license agreement. On deeper review, however, it proves distinguishable from *Dairy Queen* (and therefore falls outside the third category) because the trademark license expired pre-infringement. The plaintiffs did not raise any breach of contract claims, nor did they litigate the case as a trademark infringement claim intertwined with a breach of license claim.

While the Court is persuaded that Defendants' motion must be denied, they do raise several arguments worth addressing in some detail. First, they argue that the second view enables plaintiffs to manipulate a constitutional jury right by strategically choosing their theory of profits. See Mark A. Thurmon, *Ending the Seventh Amendment Confusion*: *A Critical Analysis of the Right to a Jury Trial in Trademark Cases*, 11 Tex. Intell. Prop. L.J. 1, 90–91 (2002). But a plaintiff's label need not control, and courts must serve as gatekeepers. Where a plaintiff contends that profits are a substitute for damages, but the evidence indicates otherwise, a court may strike a jury demand.[13] Indeed, as explained below, the threat to strike a jury demand remains viable throughout and even after the trial should Plaintiffs' proffered theory lack evidentiary support.

Defendants also argue that *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015), offers the correct interpretation of *Dairy Queen*. *Fifty-Six* concluded that *Dairy Queen* "does not broadly hold that a Lanham Act claim for disgorgement of profits is a legal claim" because the Supreme Court subsequently characterized *Dairy Queen* as "a legal claim for damages (not disgorgement of profits)." *Id.* at 1075 (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998)). But to the extent that *Feltner* referred to *Dairy Queen* as an "action for damages," 523 U.S. at 346, it helps Plaintiffs, not Defendants. It suggests that where a plaintiff requests profits that could be described as damages, a jury right exists.[14]

---

[13] See, *e.g.*, *SPSS*, 2009 WL 2579232, at *3 ("Nie has not developed a theory as to how he suffered actual damages. Rather, to the extent he is entitled to a monetary judgment, it is due to the Company's alleged unjust enrichment. Nie cannot grant himself the right to a jury trial simply by labeling his claim an accounting of profits.").

[14] *Fifty-Six* also contradicts Ninth Circuit precedent without explanation. See *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174–75 (9th Cir. 1977) (finding a jury right as to an accounting for profits).

Related cases from the third view also fail to persuade. These cases consider the profits in *Dairy Queen* to have been legal, not equitable, because the complaint involved a breach of contract claim.[15] However, *Dairy Queen* made clear that, construing the complaint to allege only trademark infringement, the remedy was still legal. *Dairy Queen*, 369 U.S. at 477.

Although the Court is unpersuaded by the third view, it does peripherally suggest an important question worth addressing: To the extent that a request for an accounting creates a jury right under the second view, does it do so only when trademark infringement occurs in the context of a licensing agreement? In other words, does it do so only when an accounting serves not as the ultimate form of relief but as a procedural tool for computing damages based on the royalty in the licensing agreement?

One measure of trademark damages is a reasonable royalty, and one measure of a reasonable royalty may be an actual royalty in a licensing agreement. Thus, on first glance, one could read *Dairy Queen*'s "accounting to determine the exact amount of money owing" to refer to a procedural tool for computing damages based on the contractual royalty.[16] But a closer look suggests otherwise. The agreement there granted the licensor the right to 50% of the licensee's *sales*, 369 U.S. at 474, and the lower court opinion makes clear that the accounting was one for *profits*, see *McCullough v. Dairy Queen, Inc.*, 194 F. Supp. 686, 687 (E.D. Pa. 1961). If the

---

[15] See, *e.g.*, *G.A. Modefine S.A.*, 888 F. Supp. at 46 ("Defendants cite *Dairy Queen* * * * for the proposition that an accounting of profits can be a legal remedy. However * * * the *Dairy Queen* Court based its decision on the fact that the predominant claim was for breach of contract and not for equitable relief." (citation and internal quotation marks omitted)); *Coca-Cola*, 330 F. Supp. at 355 (distinguishing itself from Dairy Queen because the parties "had no contractual relationship. Plaintiff's claim is not for damages for breach of a contract entered into between them.").

[16] See Mark A. Thurmon, *Ending the Seventh Amendment Confusion*: *A Critical Analysis of the Right to a Jury Trial in Trademark Cases*, 11 Tex. Intell. Prop. L.J. 1, 27–69 (2002) ("In the Supreme Court's view, *Dairy Queen* was a damages case. The *Dairy Queen* plaintiffs sought an 'accounting' in the procedural sense only, not an award of defendant's profits.")

ultimate relief were damages, an accounting of profits (rather than sales) would have been pointless.

Seventh Circuit precedent also suggests that a request for profits creates a jury right beyond the licensing context. In instructing that profits may be a proxy for damages, *BASF*, 41 F.3d at 1096, the Seventh Circuit cited *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992). *George Basch* explained that, because proving actual damages is difficult, trademark law creates an alternative form of relief—profits as a proxy for damages—which is governed by a less challenging evidentiary regime: "[I]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117. As *George Basch* explains, this regime "shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." 968 F.2d at 1539. *George Basch*'s rationale suggests that a request for profits creates a jury right beyond the licensing context. The Lanham Act's creation of an alternative evidentiary regime—one meant to facilitate the recovery of a plaintiff's loss—should not strip a party of its constitutional right to what is otherwise essentially a request for damages.

Defendants also argue that *Dairy Queen* should be read in light of the Supreme Court's "subsequent repeated characterizations of disgorgement as an equitable remedy," citing *Tull v. United States*, 481 U.S. 412 (1987) and *Curtis v. Loether*, 415 U.S. 189 (1974). Reply [110] at 4. *Curtis* addresses disgorgement only in passing, and although it suggests that disgorgement may be equitable, it does not address whether it must be and, if not, when it may be legal. See *Curtis*, 415 U.S. at 197. Moreover, *Tull*'s general statement that that disgorgement is "traditionally considered an equitable remedy," is not determinative. 481 U.S. at 424. *Tull* did not address the issue here—whether a plaintiff who claims an infringer's profits as a proxy for damages has a right to a jury.

Defendants' citation to *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992), also is unpersuasive. *Reebok* did characterize an accounting for profits as generally equitable, but it did so in the context of a different question: whether a district court may order a pre-judgment freeze of a defendant's assets in a trademark case brought under the Lanham Act. The Ninth Circuit answered in the affirmative, reasoning that because the Lanham Act authorizes "an accounting of [a defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief." *Id.* *Reebok*'s reasoning does not exclude the possibility that profits maybe equitable in some circumstances and legal in others. Similarly, *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991), acknowledges that disgorgement may be equitable, but it does not address whether it must be equitable, and whether it may be legal when profits are a proxy for damages.

Defendants cite several more cases characterizing profits as equitable. See, *e.g.*, *Fuller Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772 (7th Cir. 1962); *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203 (S.D.N.Y. 2000); *Am. Cynamide Co. v. Sterling Drug Inc.*, 649 F. Supp. 784 (D.N.J. 1986); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598, 605 (E.D. Va. 1997). But these cases do not contradict the second view, insofar as the profits at issue were expressly or effectively premised on unjust enrichment.

Defendants also contend that even if profits are considered a legal remedy when they operate as a proxy for damages, profits based on unjust enrichment are still equitable. They further argue that Plaintiffs' theory of profits must be premised on unjust enrichment, not damages, because Plaintiffs have presented no evidence that they "suffered any losses as a result

of the alleged infringing activities" and because they have "made no effort to show that any sales made to Positec would have gone to it instead." Reply, [110], at 8.

The evidence at least suggests otherwise. During the summary judgment briefing, Plaintiffs produced a declaration from Helen Fischer, director of brand marketing for the DeWalt brand. Fischer stated that Plaintiffs and Defendants sell their products in the same retail stores to the same customers. Consistent with this statement, her declaration includes a photograph depicting both sides' products side-by-side at Costco. See [93] at 24–25. Plaintiffs also offered a likelihood of confusion survey from their expert, James Berger. The Berger survey showed respondents a photograph of Plaintiffs' and Defendants' products side-by-side in a store. The survey asked respondents if they believed that the products were produced by the same company, and 47% of respondents said yes. See [93] at 32. Parties have used such survey evidence to show not only a likelihood of confusion but also actual confusion. *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997). Actual confusion, in turn, may support a plaintiff's theory of actual loss. *Web Printing Controls*, 906 F.2d at 1204–05. And actual loss supports a theory of profits as a proxy for damages, as explained above.

Taken together, Plaintiffs' evidence suggests that (1) the parties are direct competitors; (2) their products lay side-by-side in the same retail stores; and (3) a substantial percentage of customers may be confused as to the source of the parties' products. With that evidence, Plaintiffs may be able to convince a trier of fact that, by infringing Plaintiffs' trademark-related rights, Defendants' caused consumers to purchase Defendant's' products instead of Plaintiffs'. Accordingly, Plaintiffs appear to have a viable theory that profits serve as a proxy for damages.[17]

---

[17] To the extent that (1) Plaintiffs' evidence at trial falls short of making a plausible case under the "profits as a proxy for damages" model outlined above or (2) the Court becomes convinced upon further reflection that there is no right to a jury trial in this case, the Court retains the option of treating the jury's

For this reason, Defendants' reliance on *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 U.S. Dist. LEXIS 9154 (S.D.N.Y. Mar. 7, 2006), and *SPSS, Inc. v. Nie*, 2009 WL 2579232, is misplaced. As Defendants point out, both courts rejected the plaintiffs' theories of profits as a proxy for damages and concluded that profits were rooted in unjust enrichment instead. However, both cases are distinguishable; they did not involve direct competitors producing substitute products, so the evidence did not suggest that the defendants' gain correlated with the plaintiffs' loss.

Defendants' citation to *Visible Sys. Corp.*, 551 F.3d at 65, also is unpersuasive. The Court there found insufficient evidence of profits as a proxy for damages for reasons inapplicable here. The "harm to plaintiff was in fact measured and damages were awarded," and there was no evidence that the defendant profited from the infringement; the "plaintiff's theory of harm was one of reverse confusion, and reverse confusion does not lend itself to any automatic assumption that there is an equivalence between defendant's profits and plaintiff's diverted sales." *Id.* at 80.

Lastly, Defendants argue that Plaintiffs cannot contend that profits are a proxy for damages because the amended complaint includes language suggesting a theory of unjust enrichment. While the amended complaint does include such language, it is not mutually exclusive with a theory of profits as a proxy for damages. When parties are competitors selling similar products, it may well be that the defendant's sale of infringing products causes its own unjust enrichment while simultaneously causing the plaintiff a loss. To the extent that both

---

determinations as advisory (or disregarding them altogether). See Fed. R. Civ. P. 39 ("In an action not triable of right by a jury, the court * * * may try any issue with an advisory jury"); *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 324 (7th Cir. 1992) ("An equity judge can always submit an issue to a jury for advice, but he is not bound by the advisory verdict."); *United States v. Ellis Research Labs., Inc.*, 300 F.2d 550, 554 (7th Cir. 1962) ("The use of an advisory jury under Rule 39(c), F.R.C.P., lies within the discretion of the trial court"); *Burton v. Gen. Motors Corp.*, 2008 WL 3853329, at *1 (S.D. Ind. Aug. 15, 2008) (Hamilton, J.) (taking a motion to strike a jury demand under advisement during trial and instructing the parties that "if it were to find that the plaintiffs had no right to a jury trial on [certain] claims, the court would treat the jury's verdict as advisory").

theories may apply and one theory is equitable while the other is legal, the equitable relief does not negate Plaintiffs' jury right as to the legal theory. *Dairy Queen*, 369 U.S. at 472-73 (1962). Moreover, the amended complaint included allegations of damages, which make clear that Plaintiffs have alleged a loss, supporting their theory of profits as a proxy for damages.

## II.     Conclusion

For the reasons stated above, the Court denies Defendants' motion [99].


Dated: August 5, 2015

_____
Robert M. Dow, Jr.
United States District Judge