IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> POSITEC USA INC. and RW DIRECT, INC. <br><br> Defendants. | Case No. 1:11-cv-05426 <br><br> Judge Robert M. Dow, Jr. <br> Magistrate-Judge Geraldine Soat Brown |

**PLAINTIFFS' MOTION FOR ENHANCED DAMAGES UNDER 15 U.S.C. § 1117(a)**

**I.     Introduction**

Under § 1117(a) of the Lanham Act, district courts have discretion to increase an award of defendants' profits, particularly in cases where defendants' infringement is willful. Indeed, the Seventh Circuit has established clear and unmistakable instructions for trial courts to make "violations of the Lanham Act *unprofitable to the infringing party*" and that the final remedy must also be sufficient to *deter future infringement*. *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989) (emphasis added) (quoting *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985)). Given Defendants' adjudicated willful infringement for the past six years, and their brazen decision to continue infringing (unabated) after the jury verdict in this case, Plaintiffs respectfully request that the Court enhance the damage award to 25% of Defendants' gross infringing sales.

**II.     The Jury's Calculation of Defendants' Profits Under § 1117(a)**

The jury's $54 million award in this case amounts to *less than 19%* of Defendants' infringing sales of $290 million, thereby allowing Defendants to retain *more than 81%* of their willfully infringing revenue. Defendants' sister companies in China retain *100%* of their

manufacturing profits on the sale of these same infringing products. Defendants' chief financial officer testified that Defendants' companywide profit margin is 30%, which would indicate profits of $87 million on $290 million in sales. (Trial Tr. 823-824.) Likewise, Plaintiffs' damages expert, Mr. Gemini, calculated Defendants' companywide profit margins conservatively at about 25%, which puts Defendants infringing profits at $73 million. (Trial Tr. 571.)

As set forth in Black & Decker's motion for attorney fees at pages 3, and 5-7 (incorporated herein by reference), Defendants' willful infringement has proceeded non-stop straight through the entirety of this litigation, the jury verdict, and after. (Dkt #224.) The damage award in this case has not deterred or slowed Defendants' infringement in the least.

### III. Willful Trademark Infringement Must be Deterred Under Seventh Circuit Law

In the Seventh Circuit, "[t]he trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Roulo*, 886 F.2d at 941 (quoting *Otis Clapp*, 754 F.2d at 744). Particularly in cases of willful infringement, such as this, the Seventh Circuit "has recognized that **the need for deterrence** is an important dimension of section [1117(a)]." *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994) (emphasis added) (further noting that "courts have required that the **final remedy** imposed under section 35(a) provide a **sufficient deterrent** to ensure that the guilty party will not return to its former ways") (emphasis added) (citing with approval *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982)); *see also Gorenstein Enterprises, Inc. v. Quality Care – USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) ("These provisions are properly invoked where, as in this case, the infringement is deliberate.").

In *Otis Clapp*, the Seventh Circuit held that although damages cannot be so excessive that they constitute a penalty, "the monetary relief granted by the district court must be great enough

to further the statute's goal of discouraging trademark infringement…." *Otis Clapp*, 754 F.2d at 744 (the monetary award under 1117(a) must "serve as a convincing deterrent" to trademark infringement). The Ninth Circuit's *Playboy* decision, which the Seventh Circuit frequently cites with approval, *supra*, recognizes the public interest in trademark cases:

> In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, ***it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement***.

*Playboy*, 692 F.2d at 1275 (emphasis added). In other words, the willful infringer must not be allowed to "escape[] without suffering the economic harm necessary to serve as a deterrent to future infringing activities." *Sands*, 34 F.3d at 1348 (quoting *Playboy*, 692 F.2d at 1275).

### IV. Enhanced Damages are Necessary in this Case to Account for Defendants' Willful Infringement and Deter Future Infringement

Mr. Don Gao is the owner, manager (micro-manager), and decision maker of Defendants. (Trial Tr. 727-728, 765, 829.) As Defendants' own witness testified, "Gao owns the place and it's his money and he makes the decisions." (Trial Tr. 761.) Unfortunately, the jury verdict of less than 19% of Defendants' infringing revenue did not make the "violations of the Lanham Act unprofitable to the infringing party," nor is it sufficient to "serve as a convincing deterrent" to Mr. Gao or Defendants. *Otis Clapp*, 754 F.2d at 744. Notably, Defendants' sister companies in China (also owned by Mr. Gao) are making substantial profits from the manufacture and sale of the infringing products through the "transfer-pricing" set by Mr. Gao, but the jury award could not (and did not) account for these profits. Nor did the award include the intangible benefits to Defendants from their infringing sales, such as getting their foot in the door with retailers, gaining

3

shelf space, and developing customer relationships. Defendants did not slow down or stop their infringement after the verdict.

Accordingly, Plaintiffs respectfully request that this Court exercise its discretion and increase the monetary award to 25% of Defendants' infringing revenue, which allows Defendants to keep 75%, but still should be closer to making Defendants' infringement unprofitable and more likely to serve as a deterrent.[1] *See, e.g., Hospitality Int'l, Inc. v. Mahtani*, No. CIV.A. 2:97-CV-87, 1998 WL 35296447, at *10 (M.D.N.C. Aug. 3, 1998) ("a determination that profits should be set at twenty-five percent (25%) of gross sales is certainly within the range of profitability that many businesses realize. In light of the fact that all expenses are not deductible under the Lanham Act, even more businesses would realize a twenty-five percent (25%) level of profitability under the Lanham Act"). *See also Black & Decker Corp. v. Positec USA Inc.*, No. 11-CV-5426, 2015 WL 5612340, at *4 (N.D. Ill. Sept. 22, 2015) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 460 (S.D.N.Y. 2012) (awarding three times defendants' profits to "fully capture [plaintiff's] loss of market share, customer loyalty, and potential customers as a result of [defendants'] actions"); *Medline Indus., Inc. v. 9121-3140 Quebec, Inc.*, 1:09-CV-301-JL, 2010 WL 840196, at *7 (D.N.H. Mar. 5, 2010) ("us[ing] its discretionary power under § 1117(a) to enhance the award of defendants' profits by 50 percent"); *Novell, Inc. v. Network Trade Ctr., Inc.*, 25 F. Supp. 2d 1233, 1242 (D. Utah 1998) (justifying "an increase of a small percentage, less than 5% of the total award," based on intangible "harm to plaintiff's goodwill and reputation").

---

[1] The 25% figure is consistent with Mr. Gemini's gross margin calculation, and is less than the 30% set forth in the testimony of Defendants' chief financial officer. (Trial Tr. 571, 823-24.)

## V. Conclusion

For the foregoing reasons, Plaintiffs respectfully request an increase of 6% of Defendants' willfully infringing revenue, for a total award of ***$72,711,909*** – i.e., 25% of $290,847,636.

Respectfully submitted,

*/s/ Matthew G. McAndrews*
Raymond P. Niro, Jr.
Matthew G. McAndrews
Kyle D. Wallenberg
NIRO McANDREWS, LLC
200 W. Madison Street, Suite 2040
Chicago, IL 60606
(312) 755-8575
Fax: (312) 674-7481
rnirojr@niro-mcandrews.com
mmcandrews@niro-mcandrews.com
kwallenberg@niro-mcandrews.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 2, 2015 the foregoing

**PLAINTIFFS' MOTION FOR ENHANCED DAMAGES UNDER 15 U.S.C. § 1117(a)**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

| | |
|---|---|
| J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 S. Riverside Plaza, 22nd Fl.<br>Chicago, IL 60606<br>aron.carnahan@huschblackwell.com | Henry S. Alford<br>Scot A. Duvall<br>Brian P. McGraw<br>Dennis D. Murrell<br>Robert J. Theuerkauf<br>MIDDLETON REUTLINGER<br>401 S. Fourth Street<br>2500 Brown & Williamson Tower<br>Louisville, KY 40202<br>HAlford@MiddletonLaw.com<br>SDuvall@MiddletonLaw.com<br>BMcGraw@MiddletonLaw.com<br>DMurrell@MiddletonLaw.com<br>RJT@MiddletonLaw.com |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

*/s/ Matthew G. McAndrews*
Attorney for Plaintiffs
NIRO McANDREWS, LLC