**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> POSITEC USA INC. and RW DIRECT INC., <br><br> Defendants. | Case No. 1:11-cv-05426 <br><br> Judge Robert M. Dow, Jr. <br> Magistrate-Judge Geraldine Soat Brown |

**JOINT STATUS REPORT**

Plaintiffs, The Black & Decker Corporation, Black & Decker Inc., and Black & Decker (U.S.) Inc. ("Plaintiffs"), and Defendants, Positec USA Inc. and RW Direct Inc. ("Defendants") (collectively, the "Parties"), jointly submit this Status Report pursuant to the Court's Order dated September 26, 2017 (Dkt. 279).

**Plaintiffs' Position On The Issues Requiring
Judicial Resolution Prior To A Retrial**

Plaintiffs request a status hearing before the Court to discuss an orderly briefing schedule on each of the following issues:

1. *The introduction of new evidence at the retrial:*

Plaintiffs' position is that either: (1) the Parties should retry the case before a jury using only the exhibits and evidence submitted at the first trial (i.e., the record is essentially frozen); or (2) the Parties should be allowed to present new evidence, including new survey evidence.

The Parties agree that the Court has broad discretion in managing the retrial, including the admission of additional witnesses and the introduction of new evidence. However, Defendants argue that it would be "untimely and prejudicial" to allow new survey evidence from Plaintiffs,

even though Defendants intend to admit new evidence regarding their alleged change in color scheme and additional damages evidence. Plaintiffs' position is based on fundamental fairness; if the Court holds that the record is not frozen by the first trial, Plaintiffs respectfully request the right to conduct a new likelihood of confusion survey. A short schedule should be entered to complete any new fact and expert discovery.

In addition, the circumstances regarding the exclusion of Mr. Berger's likelihood of confusion survey warrant a discretionary ruling allowing Plaintiffs to conduct a new survey. On multiple occasions prior to the first trial, Defendants unsuccessfully sought to exclude Mr. Berger's likelihood of confusion survey. At the summary judgment stage, the Court rejected Defendants' criticisms of the survey, finding that, "[a]t most, these arguments reveal triable issues concerning the credibility and the weight that should be given to Berger's report." (Summary Judgment Opinion and Order, Dkt. 93, at p. 62; *id.* at p. 69 ("Defendants' various challenges to [Mr. Berger's confusion survey] go to its weight, not its admissibility or sufficiency.").) Likewise, Defendants moved to exclude Mr. Berger's confusion survey under *Daubert* for the same reasons raised on summary judgment. (Dkt. 103.) Again, the Court denied Defendants' *Daubert* motion given that Defendants failed to "raise[] a legitimate challenge to Berger's survey analysis" and were "free to challenge Berger's [survey] at trial." (Dkt. 192 at pp. 29-30; *id.* at p. 28 (holding that the universe of survey respondents "is not so flawed as to render the survey completely unhelpful o[r] inadmissible").)

It was only in post-trial proceedings that the Court found this same likelihood of confusion survey to be inadmissible. Under these circumstances, Plaintiffs respectfully request that the Court exercise its discretion and permit Plaintiffs to submit a new survey on likelihood of confusion, subject to limited expert discovery and cross-examination by Defendants.

Plaintiffs request that the Court enter a briefing schedule, if necessary, for the Parties to more fully set out their positions on this issue.

2. *Scope of Plaintiffs' registered trademark infringement claims:*

Plaintiffs intend to proceed with their registered trademark infringement claims at the retrial. Plaintiffs request that the Court enter a briefing schedule for the Parties to set out their positions regarding the extent to which Plaintiffs' family of yellow and black registered trademarks cover Defendants' yellow and black products and associated packaging.

3. *Validity/protectability of Plaintiffs' yellow and black trade dress:*

On pages 16-18 of the Memorandum Opinion and Order dated September 11, 2017 (Dkt. 276), the Court found that Plaintiffs introduced substantial evidence supporting the jury verdict regarding the validity/protectability of Plaintiffs' yellow and black trade dress.

Plaintiffs submit that the validity/protectability of their yellow and black trade dress should not be at issue at the retrial given that the jury verdict was supported by substantial undisputed testimony and evidence, including, *inter alia*: Plaintiffs' advertising, promotional activities, and staggering sales figures associated with their use of the yellow and black color scheme (*id*. at pp. 16-17); Plaintiffs' policing efforts and exclusive use of the yellow and black color scheme in the marketplace (*id*. at 17); and the results of Mr. Berger's secondary meaning survey showing that consumers strongly associate Plaintiffs with yellow and black products and packaging (*id*. at 17-18). Importantly, the exclusion of Mr. Berger's likelihood of confusion survey has no impact on the jury's findings regarding the validity and protectability of Plaintiffs' trade dress and trademarks.

Plaintiffs request that the Court enter a briefing schedule for the Parties to set out their positions on this issue.

3

4. *Defendants purportedly need briefing on the "issue" of identification of the products and/or product packaging at issue in Plaintiffs' non-registered trade-dress claims:*

The parties previously identified which of Defendants' products and product packaging are at issue. Indeed, at the first trial, the parties *jointly stipulated* that the "physical products, photographs and packaging identified as Plaintiffs' Exhibits PX-178 – PX-435 are collectively a fair and accurate representation of the entire universe of accused products in this case." (*See* Dkt. 199, 200, 200-1, 200-2.) Defendants' position, therefore, is misplaced, as this purported "issue" has already been resolved by the Parties and the Court.

### Defendants' Position On The Issues Requiring Judicial Resolution Prior To A Retrial

Defendants have identified the following gating issues, the resolution of which will impact the scope and ground rules that will govern the retrial:

1. Whether Plaintiffs will be permitted to submit new surveys or expert testimony on likelihood of confusion;

2. Whether Plaintiffs will be permitted to proceed on their registered trademark and trade dress claims;

3. What products and/or product packaging will be at issue in Plaintiffs' non-registered trade dress claims; and

4. Whether any aspects of the prior verdict are binding on the parties.

Resolution of these threshold issues will avoid the confusion that the Court has identified as plaguing the first trial and inform the scope of the jury instructions, the admissibility of evidence, and the scope of products and profits at issue. Once these gating issues are resolved, Defendants believe the remaining issues can be addressed through a new pre-trial order and through possible *Daubert* motions and motions *in limine*. Defendants would welcome a status conference to receive the Court's guidance on the best way to address these gating issues, including for setting a briefing schedule, and are ready to proceed with any path to resolution the

4

Court would establish. The Defendants' positions, as set forth below, when compared to the Plaintiffs' submission, highlight the need for the early resolution of the gating issues

*1) Defendants' position regarding Plaintiffs' submission of new surveys or expert testimony on likelihood of confusion*

On Page 10 of the Order on Post-Trial Motions, the Court stated that the "next questions are (1) whether Plaintiffs want an opportunity to present admissible expert testimony on likelihood of confusion and, if so, (2) whether the Court has discretion to permit such a "do over" and, if so, (3) whether the Court should exercise that discretion."

Plaintiffs should not be permitted to submit new surveys or expert testimony on likelihood of confusion. Although there are circumstances where a Court may have discretion to allow a party to submit new expert evidence on re-trial, this case does not meet the standard set out in controlling case law for permitting such testimony. Plaintiffs made a strategic choice not to further develop and proffer survey evidence according to an accepted methodology, and any request for leave to develop and submit new surveys or expert testimony on likelihood of confusion should be denied as untimely and unfairly prejudicial.

As the Court expressly notes in the Order on Post-Trial Motions, whether Plaintiffs will seek to, and be permitted to, submit new surveys or expert testimony on likelihood of confusion will affect several other open questions, including (1) whether any part of the case will be tried to a jury, (2) whether the schedule will need to allow for *Daubert* motions on newly disclosed expert testimony, (3) and the admissibility of Mr. Berger's secondary meaning survey.

If Plaintiffs indicate that they will seek leave to amend their Rule 26(a)(2) Expert Disclosures, Defendants request that the Court enter a briefing schedule for the Parties to set out their positions on this issue.

The remaining issues raised in Plaintiffs' statement of position regarding submitting new surveys or expert testimony are unrelated to the central question that the Court asked the Parties to address. Whether and how the jury should learn that Positec no longer uses "sunburst" packaging is an appropriate subject for resolution on a motion *in limine*, or as part of the development of a new pre-trial order. It is unrelated to whether Plaintiffs should be allowed a "do over" of their expert survey testimony.

Plaintiffs asserted during the Parties' conferences leading up to this submission that Defendants "apparently intend to request leave to admit new evidence in their case-in-chief (such … additional damages evidence)." That assertion conflates different issues. Defendants' position is that discovery should not be reopened on any issue. In that sense, the record is closed. But that does not mean, as Plaintiffs seem to suggest, that the evidence on re-trial must consist of the exact same questions and answers, and the exact same exhibits and cross materials, as were admitted in the first trial.

*2) Defendants' position regarding Plaintiffs' registered trademark and trade dress claims*

On Pages 12 and 19 of the Order on Post-Trial Motions, the Court asks Plaintiffs to consider whether they will proceed with their registered trademark infringement claims.

Defendants' position is that there is no evidence to support registered trademark and registered trade dress infringement claims, that Plaintiffs are legally mandated to drop these claims, and that Plaintiffs' claims should be limited to their claim for unregistered trade dress infringement. Defendants request that the Court enter a briefing schedule on motion practice to determine whether the registered claims are legally viable.

Resolution of this question now is key because it will affect several other pending issues, including (1) the scope of the jury instructions, (2) the admissibility of Plaintiffs' registered

trademarks and registered trade dress, (3) the admissibility of prior judgments / rulings, (4) determination of the scope of the profits at issue, and (5) the relevance / admissibility of Mr. Berger's secondary meaning survey.

*3) Defendants' position regarding the identification of the products and/or product packaging at issue in Plaintiffs' non-registered trade-dress claims*

It is essential for the Parties and this Court to know precisely which products and/or product packaging are at issue. Plaintiffs' non-registered trade dress claims should be limited to "sunburst" product packaging for competing power tools and/or power-tool accessories sold in-store. If Plaintiffs do not specify what is and what is not at issue, the Parties and the Court risk injecting the same kind of confusion that plagued the first trial and led in part to the re-trial. Lack of a clearly defined scope on these claims will result in unnecessarily vague and/or complicated jury instructions, and will further complicate the already technical damages evidence that the jurors will be asked to parse, both in proving up Plaintiffs' prima facie case, and in the deductions presented by Defendants. Most fundamentally, Defendants have a right to know which products and/or product packaging are at issue in order to properly present a tailored defense at trial.

*4) Defendants' position regarding the validity/protectability of Plaintiffs' yellow and black trade dress*

The Court has ordered a new trial in this case. As a result, no aspect of the prior verdict is binding on the Parties. Moreover, Plaintiffs' argument ignores much of the Order on Post-Trial Motions, which makes clear that in addition to granting a new trial because the jury was exposed to inadmissible testimony regarding the likelihood of confusion, the Court believes the jury was, or may have been, exposed to other inadmissible and prejudicial testimony, including inappropriate references to the fact that Defendants' tools are manufactured in China in an effort to invoke national-origin bias, the way evidence was presented about Plaintiffs' registered

7

trademarks and prior judgments, the confusing nature of the jury instructions, and the admissibility of Mr. Berger's secondary meaning survey. These issues are directly relevant to the validity/protectablity of Plaintiffs' yellow and black trade dress. For these and other reasons, claim preclusion on this issue is inappropriate, and if the Court is inclined to consider the request, Defendants request entry of a briefing schedule to address this issue.

The Parties' differences in position on these issues are not surprising given their materiality to this controversy. From the Defendants' perspective, threshold resolution of the identified gating issues (and perhaps a few others) will advance, considerably, the rest of the pretrial process and the trial itself.

Dated: November 10, 2017

Respectfully submitted,

*/s/ Raymond P. Niro, Jr.*
Raymond P. Niro, Jr.
Matthew G. McAndrews
Kyle D. Wallenberg
NIRO McANDREWS, LLC
200 W. Madison Street, Suite 2040
Chicago, IL 60606
(312) 755-8575
Fax: (312) 674-7481
rnirojr@niro-mcandrews.com
mmcandrews@niro-mcandrews.com
kwallenberg@niro-mcandrews.com

*On behalf of Plaintiffs*

*/s/ Brian D. Roche*
Brian D. Roche
Jennifer Y. DePriest
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Tel: (312) 207-2405
Fax: (312) 207-6400
broche@reedsmith.com
jdepriest@reedsmith.com

*On behalf of Defendants*

8

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was served by ECF on all known parties on this 10th day of November, 2017.

          */s/ Raymond P. Niro, Jr.*
          Raymond P. Niro, Jr.
          Matthew G. McAndrews
          Kyle D. Wallenberg
          NIRO McANDREWS, LLC
          200 W. Madison Street, Suite 2040
          Chicago, IL 60606
          (312) 755-8575
          Fax: (312) 674-7481
          rnirojr@niro-mcandrews.com
          mmcandrews@niro-mcandrews.com
          kwallenberg@niro-mcandrews.com

          *On behalf of Plaintiffs*