**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| The Black & Decker Corporation, Black & Decker, Inc. and Black & Decker (U.S.) Inc., | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | No.: 11-cv-5426 |
| v. | : | Honorable Robert M. Dow |
| | : | |
| Positec USA Inc. and RW Direct Inc. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................... 1

    A.    Plaintiffs' Registered Trademarks .......................................... 1

    B.    Plaintiffs' Distinct Packaging Styles ..................................... 3

    C.    Defendants' Sunburst Packaging .......................................... 5

III.    LEGAL STANDARD ............................................................................ 6

ARGUMENT ................................................................................................. 7

    A.    Defendants Are Entitled to Summary Judgment on Plaintiff's Registered Trademark Infringement Claim ................................ 7

        1.    Plaintiffs' Registered Trademarks Do Not Cover Defendants' Packaging. .................................................... 7

            a.    Plaintiffs' "family of marks" and "closely related products" theories do not extend Plaintiffs' trademarks to Defendants' packaging. .................................................................. 8

            b.    Plaintiffs' claimed "common characteristic" is impermissibly vague. ...................................... 9

        2.    There Is No Evidence that the JawHorse Infringes Any of Plaintiffs' Registered Trademarks. ............................. 12

    B.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Unregistered Trade Dress Infringement Claim as to Defendants' Packaging. .......................... 14

        1.    Each Style of Product or Packaging that Comprises the "Family" Must Be Protectable at the Time a Purported Infringer Enters the Market. .................................................................. 14

        2.    Plaintiffs' Black Bar and Predominantly Black with Photograph Packaging Styles Are Not Part of a Protectable Family of Trade Dress in this Case. ............................................................. 16

        3.    Plaintiffs Cannot Rely on Their Yellow Packaging Style to Create a Protectable Family of Unregistered Trade Dress. ................ 18

    C.    Defendants' JawHorse Product Does Not Infringe Plaintiffs' Unregistered Trade Dress. ....................................................... 20

IV.    CONCLUSION ..................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
    311 F.3d 796 (7th Cir. 2002) .......................................................... *passim*

*AMID, Inc. v. Medic Alert Found. United States, Inc.*,
    241 F. Supp. 3d 788 (S.D. Tex. 2017) .....................................................19

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................6

*Aromatique, Inc. v. Gold Seal, Inc.*,
    28 F.3d 863 (8th Cir. 1994) ...............................................................11

*Braun Inc. v. Dynamics Corp. of Am.*,
    975 F.2d 815 (Fed. Cir. 1992)............................................................17

*Cedar Valley Exteriors, Inc. v. Prof'l Exteriors, Inc.*,
    No. 13-CV-2537 (PJS/TNL), 2016 WL 3629078 (D. Minn. June 29, 2016) ..........11

*Clark & Freeman Corp. v. Heartland Co.*,
    811 F. Supp. 137 (S.D.N.Y. 1993).......................................................13

*Forney Indus., Inc. v. Daco of Mo., Inc.*,
    835 F.3d 1238 (10th Cir. 2016) ...................................................14, 19, 20

*Hain BluePrint, Inc. v. Blueprint Coffee, LLC*,
    No. 4:16-cv-1758-SNLJ, 2018 WL 6246984, (E.D. Mo. Nov. 29, 2018) ..............13

*Hartco Eng'g, Inc. v. Wang's Int'l, Inc.*,
    142 F. App'x 455 (Fed. Cir. 2005) .......................................................21

*Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prod. Corp.*,
    667 F. Supp. 1221 (N.D. Ill. 1987) ......................................................17

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
    No. 12-cv-9033, 2016 WL 5112020 (N.D. Ill. Sept. 20, 2016)........................21

*Natural Footwear Ltd. v. Hart, Schaffner & Marx*,
    760 F.2d 1383 (3d Cir. 1985).............................................................12

*In re Pennington Seed, Inc.*,
    466 F.3d 1053 (Fed. Cir. 2006)...........................................................11

*Pfizer Inc. v. Astra Pharm. Prods., Inc.*,
    858 F. Supp. 1305 (S.D.N.Y. 1994)...........................................................................16

*Physicians Formula Cosmetics, Inc. v. W. Cabot Cosmetics, Inc.*,
    857 F.2d 80 (2d Cir. 1988).........................................................................................13

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995)....................................................................................................14

*S Indus., Inc. v. Diamond Multimedia Sys., Inc.*,
    991 F. Supp. 1012 (N.D. Ill. 1998) ..............................................................................6

*S Indus., Inc. v. Kimberly-Clark Corp.*,
    No. 96 C 3916, 1996 WL 388427 (N.D. Ill. July 9, 1996) ........................................12

*Sands, Taylor & Wood Co. v. The Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) ......................................................................................13

*In re Save Venice New York, Inc.*,
    259 F.3d 1346 (Fed. Cir. 2001)...................................................................................12

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
    970 F. Supp. 279 (S.D.N.Y. 1997)..............................................................................15

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*,
    No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 18, 2017).............................20, 21

*Spraying Sys. Co. v. Delavan, Inc.*,
    975 F.2d 387 (7th Cir. 1992) ........................................................................................9

*Spurling v. C & M Fine Pack, Inc.*,
    739 F.3d 1055 (7th Cir. 2014) ......................................................................................6

*Thomas & Betts Corp. v. Panduit Corp.*,
    65 F.3d 654 (7th Cir. 1995) ........................................................................................21

*In re Thrifty, Inc.*,
    274 F.3d 1349 (Fed. Cir. 2001).............................................................................11, 19

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)........................................................................................18

## Statutes

15 U.S.C. § 1057(b) ...........................................................................................................12

## Rules

Fed. R. Civ. P. 56(a) ...........................................................................................................6

**Other Authorities**

*The family of marks rule*, 4 McCarthy on Trademarks & Unfair Competition §
    23:61 (5th ed.)...................................................................................................9, 10

Trademark Manual of Examining Procedure, Oct. 2018 version, Sec. 1202.05 ....................11, 19

## I.     INTRODUCTION

The post-trial proceedings have provided further insights into Plaintiff's infringement allegations and those insights establish that Defendants are entitled to summary judgment on Plaintiff's "family" of registered trademark and their "family" of trade dress infringement claims.

*First*, Plaintiffs' registered trademark claim does *not* extend to Defendants' sunburst packaging under Plaintiffs' legally unsupported family theory. Rather, any registered trademark claim is limited to the only product still at issue – Defendants' Rockwell-branded JawHorse – a non-powered work support product with a clamping device unlike anything sold by Plaintiffs. There is no evidence that the non-power JawHorse is "closely related" to any power tool or accessory specified in Plaintiffs' registered trademarks. Summary judgment thus should be granted on Plaintiffs' registered trademark claim.

*Second*, while Plaintiffs have asserted their unregistered trade dress is "the yellow and black colors used on the DeWalt family of *products and packaging*" this Court has recognized that Plaintiffs' unregistered trade dress claim relates specifically to Defendants' sunburst packaging, and not Defendants' products. But Plaintiffs' purported "family" of packaging – comprised of three distinct styles – had not acquired secondary meaning as of the time Defendants' sunburst packaging entered the market. Nor have Plaintiffs identified any protectable unregistered trade dress in product design or appearance that the JawHorse infringes. Summary judgment accordingly should be granted on Plaintiffs' unregistered trade dress infringement claim as well.

## II.    STATEMENT OF FACTS

### A.     Plaintiffs' Registered Trademarks

Plaintiffs define their asserted "family" of registered trademarks as the "colors yellow and black". (Defendants' Statement of Undisputed Material Facts ("SUMF") at 12.) Plaintiffs,

however, have been unable to obtain a registered trademark for a non-specific color combination of yellow and black alone. (*See, e.g.*, SUMF at 18-24.)

While Plaintiffs do have dozens of registered trademarks that incorporate specific elements of yellow and black, they are limited to design elements on B&D's *power tool products* and *power tool accessories*. These registered trademarks universally state that they are for "power operated tools and machines," "electric power tools," "power tools," and accessory items like saw blades or battery chargers "for use in connection with electrically powered saws" or "for use with electric power tools" (collectively, the "registered marks"). (SUMF at 8, 9.) Moreover, the registered marks that form the basis of Plaintiffs' registered trademark claim undisputedly do not include registrations on power tool and power tool accessory *packaging*. (SUMF at 11.) Therefore, Defendants' sunburst packaging does not infringe any single registered mark.[1]

It is also undisputed that none of Plaintiffs' *products* infringes any single registered mark. In fact, during the initial trial, Plaintiffs' corporate representative conceded that none of Defendants' products infringed any one of Plaintiffs' Registered Marks:

> Q: Are you aware – setting aside family, if we go through all of these individually and compare them against our products individually, are you aware of any of these specific trademarks that we somehow infringe?
>
> A: I'm not.

(SUMF at 13; *see also id.* at 10.)

In this case, the only *product* accused of infringement is Defendants' JawHorse product. The JawHorse is a non-powered portable work station with a clamping device that can hold

---

[1] Plaintiffs misleadingly suggest in their Statement of Claims at Trial that they hold a registered trademark on power tool packaging. (Dkt. 304 at 7 (stating Plaintiffs have a registered trademark on "power tool 'packaging' cases").) But that registration is not for the cardboard packaging boxes at issue in this dispute. Instead, Registered Mark No. 2,999,545 is for "Power Tool Cases Made of Plastic Sold as a Unit with a Power Tool". (SUMF at 14-17.) Plaintiffs have never alleged that Defendants sold any plastic power tool cases that potentially infringe this mark.

hardware or equipment on which the user is working. (SUMF at 25.) None of the registered marks is for a non-powered portable work station with a clamping device like the JawHorse. (SUMF at 28.) Nor do Plaintiffs sell a product competitively comparable product to the JawHorse. (SUMF at 26, 27.)

### B. Plaintiffs' Distinct Packaging Styles

Plaintiffs assert a family trade dress comprised of "the yellow and black colors used on the DeWalt family of products and packaging." (SUMF at 30, 31; *see also* Dkt. 276 at 12.) In that regard, DeWalt has used three distinct packaging styles at different times over the last few decades. (*See* SUMF at 32.) The changes were made as part of a marketing strategy to differentiate the DeWalt products as the DeWalt product category grew and price points began to expand. (SUMF at 42.)

*The "Yellow" Style (introduced in 1992)*

The first DeWalt packaging style, introduced in 1992, is depicted below:



(SUMF at 33.) This Yellow style was part of DeWalt's initial launch of its power tools and accessories, and used yellow as the primary feature color. (SUMF at 35; *id.* at 34 (B&D brand book describing style as "Carton color is 'DEWALT Yellow' and must always be prominent

color"); *id.* at 44 (Plaintiffs' corporate representative describing style as having "a completely yellow front").) DeWalt's Yellow style used an "illustrative rendering" or a "pointillist approach" resembling a drawing to depict the product image rather than a photographic-style, in order to "provide[] a bit of separation between the consumer positioning of our consumer brand, such as Black & Decker, and our DEWALT brand for the professional." (SUMF at 36, 37, 48.)

*The "Black Bar" Style (introduced in late 2008 or 2009)*

DeWalt's second packaging style is depicted below:



(SUMF at 38.) The Black Bar style of packaging was developed sometime in 2008, first appeared in the market in late 2008 or 2009, and was rolled out in phases over time as DeWalt's "new-look package that everything was starting to transition to." (SUMF at 39-41, 43.) DeWalt's packaging "evolved as the product strategy evolved" and it created this style as a "premium packaging style" to distinguish "[h]igher price point products." (SUMF at 42.)

*The "Predominantly Black with Photograph" Style (introduced in 2010 or 2011)*

The third packaging style is depicted below:



(SUMF at 45.) DeWalt launched this style, which was "a departure from [DeWalt's] traditional heavily yellow carton" and used significantly more black than the prior styles, sometime in 2010 or 2011. (SUMF at 46.) Internally, Plaintiffs were concerned that this package style represented "a departure from our traditionally heavily yellow carton". (SUMF at 53.) Specifically, this third style added additional gray and silver colors where the packaging identified the "18-volt lithium ion" battery, and changed the depiction of the product on the package from a rendering resembling a drawing to a "different treatment, a different style" that resulted in a "more detailed image" that "looks more like a photograph". (SUMF at 47, 49-51.)

### C. Defendants' Sunburst Packaging

Defendants introduced their sunburst packaging in May of 2009. (SUMF at 55.) Prior to that, Positec's Rockwell brand used a packaging style that had a black and yellow caution tape across the boxes. (SUMF at 56.) Positec wanted something new and unique but also desired to maintain some consistency with the existing yellow color from its caution tape packaging. (SUMF at 57.) The resulting packaging incorporated the ruggedness of the tools by using distressed imagery and used the same gray/green color that appears on actual Rockwell tools. (SUMF at 58.) The new packaging also featured a four-color photograph of the tool floating on a starburst or sunburst two-color background of Rockwell gold and pale yellow. (SUMF at 59.) This four-

color process was more expensive but made "the box brighter and stand out with a higher-quality look." (SUMF at 59.)

Neither the second nor third style of Plaintiffs' packaging was on the market at the time Defendants developed the sunburst packaging. (SUMF at 60, 61.)

## III. LEGAL STANDARD

Summary judgment is appropriate "if the moving party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A fact is genuinely disputed only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In order to prevail on a registered trademark claim, where the plaintiff does not own a trademark registration for the mark as used by the defendant, a plaintiff must show that its marks are registered and that the plaintiff and defendant "products [] are considered to be 'closely related'". *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1017 (N.D. Ill. 1998) (citation omitted). Only then can a plaintiff proceed to demonstrate whether the defendant's use causes consumer confusion, deception or mistake. *Id.*

A party claiming a family of unregistered trade dress "must articulate a specific trade dress and demonstrate that it has consistently used that trade dress" as well as prove that the family of trade dress has acquired secondary meaning. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814–15 (7th Cir. 2002).

## ARGUMENT

### A. Defendants Are Entitled to Summary Judgment on Plaintiff's Registered Trademark Infringement Claim

Plaintiffs have conceded that Defendants do not infringe any one of their registered marks. But they nonetheless indicate in their Statement of Claims at Trial (Dkt. 304) that they intend to proceed with their registered trademark infringement claim in the new trial. In fact, they contend that the very items that the registrations *do not cover* – power tool *packaging* and Defendants' *non-power* JawHorse product – infringe their trademark registrations. (Dkt. 304 at 11.) In support, Plaintiffs continue their misplaced reliance on theories that (i) they hold a "family" of trademarks that extends these registrations to packaging (an argument that this Court has rejected and no other court has embraced) and (ii) their trademarks cover purported "closely related" products (products not referenced anywhere in the registered marks). Neither theory supports Plaintiffs' attempts to extend the reach of their registered marks on power tools and accessories to packaging or to the JawHorse product.

#### 1. Plaintiffs' Registered Trademarks Do Not Cover Defendants' *Packaging*.

This case is and has always been about whether Defendants' "sunburst"-style packaging infringes Plaintiffs' unregistered trade dress. Plaintiffs' efforts to include a registered trademark claim against Defendants' packaging fail as a matter of law for two primary reasons: (1) neither the "family of marks" nor the "closely related product" theory extends Plaintiffs' registered *trademarks* on their products to Defendants' *packaging*; and (2) the claimed "common characteristic" among the marks – *color* – is impermissibly vague and abstract, and thus is insufficient to define a protectable "family" of registered marks.

a. **Plaintiffs' "family of marks" and "closely related products" theories do not extend Plaintiffs' trademarks to Defendants' packaging.**

Plaintiffs' registered trademark claim as to Defendants' packaging is premised on their argument that they have a "family" of registered marks that protects any use of yellow and black across some broad and ill-defined spectrum of products *and* packaging. (Dkt. 304 at 7.) According to the Seventh Circuit, a "family of marks" is:

> a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner.

*AM Gen. Corp.*, 311 F.3d at 814 (citation omitted). Here, Plaintiffs' registered marks relate to *specific* uses of yellow and black on defined components of power tools and power tool accessories, or in the DeWalt logo. (SUMF at 8-10.) Thus, to the extent Plaintiffs have a "family" of registered trademarks with a common characteristic, that common characteristic is unrelated to *packaging*.

This Court recognized as much in its New Trial Order, and rejected Plaintiffs' argument that a family theory extends Plaintiffs' registered marks to cover Defendants' packaging:

> However, upon viewing the registered trademarks at trial, it appears that their relevance is limited to any of Defendants' *tools* or accessories that have a yellow and black color scheme (like the JawHorse), and not to Defendants' packaging…. **It would extend the "family" of marks concept too far to say that registered marks that cover components of tools and accessories also cover their packaging.**

(Dkt. 276 at 11) (emphasis added); *id.* at 12 ("In hindsight, it seems apparent that the relevant 'family' must be different for the two types of claims, because the registered trademarks have nothing to do with Plaintiffs' packaging.").[2]

_____

[2] As the Court noted, the combined trademark and trade dress instructions in the prior trial "may have confused the jury as to what each relevant 'family' encompasses," concluding that the relevant "families" for each claim are clear: "the registered trademark infringement claim is based on power tools and power

The Court also offered a hypothetical that makes this same point: "Imagine if Plaintiffs used yellow and black on their tools, but not on their packaging. Under Plaintiffs' 'family' theory, competitors still could not use yellow and black on their packaging, because customers associate those colors with Plaintiffs' tools." (Dkt. 276 at 11.) Accordingly, the Court expressly instructed Plaintiffs to "consider whether it is advisable (or perhaps even legally mandated) to drop the trademark infringement claim or limit it to the JawHorse, since (as was made clear at trial) *their registered trademarks do not cover any of their packaging*." (Dkt. 276 at 12, 19 (emphasis added).)

Indeed, the applicable case law indicates that the "family" of marks concept is a limited doctrine that does not apply beyond some distinctive element – typically, word marks sharing a common family "surname", such as the "Mc" in McDonalds – that is shared *between the marks themselves*. *See AM Gen. Corp.*, 311 F.3d at 814; *see also Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 395 (7th Cir. 1992) ("A number of cases have explained that possession of several marks with a common suffix, prefix or syllable can give rise to a protected 'family' of marks; the common element is the family 'surname.'"); *The family of marks rule*, 4 McCarthy on Trademarks & Unfair Competition § 23:61 (5th ed.) (listing examples of cases recognizing a family of marks, all of which involve word marks with common prefix, suffix or syllable).

As the record reflects, Plaintiffs' "family" theory is a factual and legal disconnect where trademark infringement is concerned. The Court should grant summary judgment on Plaintiffs' registered claim for this reason alone.

> **b.      Plaintiffs' claimed "common characteristic" is impermissibly vague.**

Plaintiffs' registered trademark claim fails for an additional reason: even if the family of marks related to power tools were to extend to packaging, Plaintiffs' identification of the purported

---

tool accessories; the trade dress claim based on packaging." (Dkt. 276 at 12.)

"common characteristic" of its registered marks – simply "the colors of yellow and black" (Dkt. 304 at 7) – is impermissibly vague and too abstract as a matter of law to form the basis for any protectable family of registered marks. *See The family of marks rule*, 4 McCarthy on Trademarks & Unfair Competition § 23:61 (5th ed.) (noting trademark board rejected a "claimed family structured as repeated words and exclamation points" as "'far too abstract to satisfy' the requirement of a protectable common characteristic").

*AM General Corp.* is instructive. In that case, DaimlerChrysler had a registered mark on a seven slot Jeep grille design (the "CJ-2A grille") but also claimed an expanded "family" of trade dress based on a "history of Jeep vehicles [that] includes a family of marks … define[d] as seven to ten vertical slots that appear to be stamped through a planar surface." 311 F.3d at at 812-13. DaimlerChrysler asserted GM's Humvee vehicle design that used seven vertical grille slots infringed this "family" of grille designs. The Seventh Circuit observed that DaimlerChrysler's characterization of the shared elements among its family of grille designs was broad and undefined, stating that DaimlerChrysler "refers to a *family* of marks . . . because it has used a variety of grilles that fit within its definition of the Jeep grille design, and many of those grilles are actually quite dissimilar in appearance." *Id.* (emphasis added). Ultimately, the court rejected DaimlerChrysler's "family" and held that it was limited to a trademark infringement claim premised on only the CJ-2A grille design as set forth in its registered mark. *Id.* at 819.

Here, Plaintiffs' claim that its myriad registered marks share the vaguely defined common characteristic of use of yellow and black colors does not suffice as a protectable "family" of marks. Rather, as in *AM General Corp.*, Plaintiffs should be limited to asserting only infringement of the registered marks themselves – which, Plaintiffs have already conceded, Defendants do not infringe.

Moreover, Plaintiffs' claimed "common characteristic" of yellow and black colors will not support their "family" theory in any event. As courts have recognized, "[t]he commercial impression of a color may change depending on the object to which it is applied." *In re Thrifty, Inc.*, 274 F.3d 1349, 1353 (Fed. Cir. 2001) ("a word mark retains its same appearance when used on different objects, but color is not immediately distinguishable as a service mark when used in similar circumstances"). Indeed, the Trademark Board's examining procedures make clear that a registered trademark application for color in the abstract will be rejected as an impermissible mark with changeable elements. *See* Trademark Manual of Examining Procedure, Oct. 2018 version, Sec. 1202.05(c) ("Granting an application for registration of color in the abstract, without considering the manner or context in which the color is used, would be contrary to law and public policy, because it would result in an unlimited number of marks being claimed in a single application.").[3] *See also Cedar Valley Exteriors, Inc.*, 2016 WL 3629078, at *1 (noting "[c]olor marks are generally subject to the phantom-mark rule"; amending registered marks "for a color" that violated functionality and phantom mark rules; marks were "extraordinarily broad" and "appear to cover *any* use of *any* shade of orange in *any* article of clothing or *any* form of advertisement related to *any* aspect of the construction industry") (emphasis in original). *See also supra*, p. 11 n.3.

---

[3] "The Federal Circuit has said that the TMEP is entitled to some deference: 'While the TMEP is not established law, but only provides instructions to examiners, it does represent the PTO's established policy ... that is entitled to our respect.' *In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006). Accordingly, federal-court decisions routinely rely on the TMEP, *see, e.g., Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869, 873 (8th Cir. 1994), and both Cedar Valley and Professional Exteriors cite the TMEP liberally." *Cedar Valley Exteriors, Inc. v. Prof'l Exteriors, Inc.*, No. 13-CV-2537 (PJS/TNL), 2016 WL 3629078, at *6 n.6 (D. Minn. June 29, 2016).

Plaintiffs' attempt to continue to litigate their registered marks is a legal misfire, and the Court should reject it on summary judgment for this reason also. There is no protectable family of trademarks as Plaintiffs have framed it.

### 2. There Is No Evidence that the JawHorse Infringes Any of Plaintiffs' Registered Trademarks.

As with Defendants' packaging, Plaintiffs seek to extend their "family" of registered marks on power tools and power tool accessories to allow a claim against a single Rockwell *product* – a non-powered portable work support product called the JawHorse that can clamp to hold hardware or equipment on which the user is working. (Dkt. 304 at 7; *see also* SUMF at 25.) This attempt fails as a matter of fact and law and the Court should reject Plaintiffs' attempt to expand the reach of its registered marks to achieve a virtual monopoly on the use of yellow and black on *any* tools.

Under the Lanham Act, registration of a mark "shall be prima facie evidence of the validity of the registered mark . . . on or in connection with *the goods or services specified in the certificate.*" 15 U.S.C. § 1057(b) (emphasis added). This statutory presumption of an exclusive right to use a registered trademark does "*not* create a presumptive exclusive right to use the mark for entirely different goods." *S Indus., Inc. v. Kimberly-Clark Corp.*, No. 96 C 3916, 1996 WL 388427, at *1 (N.D. Ill. July 9, 1996) (emphasis in original); *see also In re Save Venice New York, Inc.*, 259 F.3d 1346, 1353 (Fed. Cir. 2001) ("A registered mark is incontestable only in the form registered and for the goods or services claimed."); *Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1396 (3d Cir. 1985) (agreeing that "even if a mark is registered, the presumptive right to use it extends only so far as the goods or services noted in the registration certificate") (internal quotation and citation omitted).

Courts have, however, recognized a limited exception to the general statutory restriction of the scope of a registered mark, noting the "use of a mark in connection with one good or service

could also give priority of use in connection with a second good or service, if the two are closely related." *Hain BluePrint, Inc. v. Blueprint Coffee LLC*, No. 4:16-cv-1758-SNLJ, 2018 WL 6246984, at *4–5 (E.D. Mo. Nov. 29, 2018). *See also Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 958-59 (7th Cir. 1992) (finding products were "closely related" where goods would be in direct competition and "virtually identical"). Thus, whether Plaintiffs' registered marks can extend to cover Defendants' non-powered JawHorse product depends on whether Plaintiffs can prove that a non-powered work support product with a clamping device such as the JawHorse is "closely related" to the power tools and power tool accessories covered by Plaintiffs' registered marks. They cannot.

To demonstrate that Plaintiffs' covered power tools and power tool accessories are closely related to the non-power JawHorse workstation, Plaintiffs must "make clear an actual proximate relatedness between [the] goods." *Hain BluePrint, Inc.*, 2018 WL 6246984, at *6. *See also Physicians Formula Cosmetics, Inc. v. W. Cabot Cosmetics, Inc.*, 857 F.2d 80, 82-83 n.1 (2d Cir. 1988) (prior use of mark on hard-bar soap did not give priority to use similar mark in connection with cosmetics and skin creams); *Clark & Freeman Corp. v. Heartland Co.*, 811 F. Supp. 137, 142 (S.D.N.Y. 1993) (plaintiff's senior rights in mark with respect to women's boots did not give priority over defendant's intervening use of the mark with respect to shirts, sweaters, trousers, and jackets).

There is no evidence to support an argument that the JawHorse non-powered work support product with a clamping device is "closely related" to any of the power tools and power tool accessories identified in their registrations. Plaintiffs do not identify a single registered mark that they claim covers a product that is closely related to the JawHorse and Plaintiffs do not offer any product like the JawHorse. (SUMF at 13, 26-28.) The Trademark Office notably has rejected

Plaintiffs' argument that a non-power tool referenced in one of Plaintiffs' *unsuccessful* applications was related to the power tools in Plaintiffs' registered marks, observing that "[t]he applicant's goods are not 'power tools' but 'portable electric generators.'" (SUMF at 18-21.)

Simply put, the JawHorse is not a power tool or a power tool accessory. It is an entirely different type of product performing an entirely different function, and it does not, as a result, look remotely similar to any of the tools covered in Plaintiffs' registered trademarks. (*See* SUMF at 27.) Defendants therefore are entitled to summary judgment on Plaintiffs' registered trademark claim as to the JawHorse.

**B.      Defendants Are Entitled to Summary Judgment on Plaintiffs' Unregistered Trade Dress Infringement Claim as to Defendants' Packaging.**

Plaintiffs define their trade dress claim to broadly include all their packaging styles and products, describing them collectively as a purported "family" of unregistered trade dress. (SUMF at 30, 31.) But the record demonstrates, conclusively, that Plaintiffs have no protectable "family" of trade dress to assert against Defendants' sunburst packaging. Rather, the undisputed evidence shows that the three styles of Plaintiffs' packaging – which comprise Plaintiffs' purported family – had not acquired the necessary secondary meaning at the time of Defendants' first use of the alleged infringing sunburst packaging. Nor have Plaintiffs identified *any* protectable trade dress purportedly infringed by the JawHorse. As a result, Defendants also are entitled to summary judgment on Plaintiffs' unregistered trade dress claim as they have framed it.

**1.      Each Style of Product or Packaging that Comprises the "Family" Must Be Protectable at the Time a Purported Infringer Enters the Market.**

The Supreme Court has made clear that color – the "common characteristic" of Plaintiffs' family of unregistered trade dress – can only be protected as a trademark where it has acquired secondary meaning. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163-64 (1995). *See also Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1252 (10th Cir. 2016) (holding that color

combination in packaging is not inherently distinctive trade dress unless "used in combination with a well-defined shape, pattern, or other distinctive design" and that otherwise secondary meaning must be shown for the trade dress to be protectable); *AM Gen. Corp.*, 311 F.3d at 815, 819 ("to be protected, the common characteristic [of the trade dress family] must have developed secondary meaning").

The Seventh Circuit's decision in *AM General Corp.* applies this over-arching principle to a claim of a protectable "family" of trade dress. There, the court held that, as to a claim of an unregistered trade dress family, "the proponent of a family of marks must prove that, *prior to the junior user's entry*, all or many of the marks in the alleged family were used and promoted in such a way as to create public perception of the family mark as an indicator of source." *AM Gen. Corp.*, 311 F.3d at 819 (quoting *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 297 (S.D.N.Y. 1997)) (emphasis added). A party "can't be said to have infringed a family of marks that did not exist when its [allegedly infringing product] entered the market, or at least had not acquired secondary meaning when [that product] entered the market." *See id.* at 819. Accordingly, the court affirmed the district court's opinion denying DaimlerChrysler's motion for a preliminary injunction on a claim of infringement (as well as dilution) of DaimlerChrysler's asserted family of Jeep grille design trade dress, which DaimlerChrysler had defined as "seven to ten vertical slots that appear to be stamped through a planar surface." *Id.* at 812.

In reaching that result, the court specifically found that although DaimlerChrysler "presented evidence concerning the strength of the family of marks that exists in 2002 [at the time of the preliminary injunction], when all three Jeep models bear grilles with seven vertical slots that appear to have been stamped through a planar surface," the court rejected that evidence because those Jeep models were not sold at the time of General Motors' entry into the marketplace with

the allegedly infringing "Hummer grille", in 1985. *Id.* at 811, 819. The court also concluded that "[i]f DaimlerChrysler marketed only one member of the 'family' when General Motors entered the market, there was no family even if DaimlerChrysler intended to add other products to the family." *Id.* at 819. Accordingly, it held that General Motors could not have infringed any *family* of grille design trade dress that included those later Jeep models. *Id.*; *see Pfizer Inc. v. Astra Pharm. Prods., Inc.*, 858 F. Supp. 1305, 1328–30 (S.D.N.Y. 1994) (granting summary judgment on trademark infringement claim, holding "Pfizer's family of marks claim is defective as a matter of undisputed fact and as a matter of law"; collecting cases holding that "the issue of the existence of the family of marks should be judged at the time that the junior user entered the marketplace.")

2. **Plaintiffs' Black Bar and Predominantly Black with Photograph Packaging Styles Are Not Part of a Protectable Family of Trade Dress in this Case.**

As set forth above, Plaintiffs' unregistered trade dress infringement claim, as they have framed it, extends to all of its packaging styles, collectively, as a family. (SUMF at 30, 31.) In that regard, DeWalt has used three distinct packaging styles, introduced at different points in time over the last few decades. These styles evolved from a "heavily" yellow style using black only on text and a rendering of the tool, to one that combines the use of yellow with prominent black features, including a black top and black bars along the front of the package, to one that is predominantly black and that uses a photograph-like style rather than a rendering of the tool. Plaintiffs introduced their "Yellow" style in 1992; their "Black Bar" style in late 2008 or 2009; and their "Predominantly Black with Photograph" style in approximately 2010 or 2011. (SUMF at 35, 39, 41, 46.) But as a matter of law and undisputed fact, Plaintiffs have not established secondary meaning for this "family" of trade dress because at least two of their three asserted styles of packaging were not widely used or even in use as of the critical time period when Defendants' entered the market with the sunburst packaging.

- 16 -

Here, the undisputed evidence shows that Plaintiffs' Predominantly Black with Photograph packaging style (the third style) was not in use at all until *after* Defendants' entry into the market with the sunburst packaging in May 2009. (SUMF at 46.) And to the extent there is evidence that the Black Bar style (the second style) had been used in some limited fashion before May 2009, when Defendants "sunburst" packaging entered the market, there is no evidence that this "Black Bar" style of packaging – different than the much earlier introduced Yellow style – had acquired secondary meaning within that minimal time period. (SUMF at 39, 41, 43, 44.) *See Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prod. Corp.*, 667 F. Supp. 1221 (N.D. Ill. 1987) (holding that camera manufacturer failed to establish secondary meaning where trade dress consisting of combinations of contrasting colors had been used for period of 14 months); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) ("[W]hile not impossible, it is difficult for a product to acquire secondary meaning during an 18–month period.").

Moreover, Plaintiffs concede that while their newer packaging styles were "a departure from our traditional heavily yellow carton", and that internally they questioned whether the new packaging "still looked yellow and black as this was being developed", they nevertheless concede they did not survey or study consumer response to the new packaging (SUMF at 52) – which would be critical to measuring secondary meaning at that time. *Keystone Camera Prods. Corp.*, 667 F. Supp. at 1229 ("Secondary meaning describes the association that consumers make between a particular product and the producer or source of that product."). Here, Plaintiffs lack any evidence that the second and third packaging styles had acquired secondary meaning at the time Defendants' sunburst packaging entered the market, and as such, they cannot assert all of these packaging styles indiscriminately as a family of trade dress. *See AM General Corp.*, 311 F.3d at 818–19.[4] Because

---

[4] Notably, Plaintiffs' new purported "secondary meaning" survey only tested a cropped image of the front of a Yellow style package, and did not address either the Black Bar or Predominantly Black with Photograph

Plaintiffs cannot establish a protectable family of trade dress comprised of its three packaging styles, Defendants are entitled to summary judgment on Plaintiffs' claimed family of trade dress as they have framed it.

### 3. Plaintiffs Cannot Rely on Their Yellow Packaging Style to Create a Protectable Family of Unregistered Trade Dress.

Plaintiffs likely will argue that their Yellow packaging style (the first style in their claimed family of packaging trade dress) has acquired secondary meaning and that is sufficient to establish a protectable family of trade dress across all three packaging styles, even though those later styles were not in use when Defendants' entered the market. That argument fails under *AM General Corp.* for the reasons just noted. But it also ignores the most basic element needed to establish a family.

That is, to meet their burden of proof on the family they claim, Plaintiffs must articulate that there are *specific common elements that are consistently used* across the distinct styles of packaging that comprise their purported family of unregistered trade dress. "One claiming family trade dress protection must articulate a specific trade dress *and demonstrate that it has consistently used that trade dress*, and even then, 'courts consider these broader product line claims with an 'acute' concern for protecting competition given that any remedy could potentially cover a wide range of products.'" *AM Gen. Corp.*, 311 F.3d at 814-15 (emphasis added) (citation omitted). *See also* Dkt. 93 at 55-56 (quoting *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 117-18 (2d Cir. 2001)). "Unless the trade dress for which protection is sought is specifically defined *with a stable visual appearance*, the party seeking protection might obtain a right to monopolize a variety of dress far beyond what the plaintiff might ever use." *AM Gen. Corp.*, 311 F.3d at 835 n.6 (emphasis

---

styles. (SUMF at 54.) Defendants do not concede that Plaintiffs have established secondary meaning with respect to the Yellow style packaging.

added).  Accordingly, a plaintiff claiming a family of trade dress spanning various packaging styles, as Plaintiffs do here, must identify how those variations in styles are nevertheless still used in a consistent way.  *See Forney Indus., Inc.*, 835 F.3d at 1252 (stating "[w]e question whether this description would satisfy the articulation requirement for a protectable mark" where plaintiff had "used the combination of red, yellow, white, and black in such diverse ways [on its tool packaging] that there is *no consistent shape, pattern, or design* we can discern from its description of its mark or from the examples it provides"); *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 807 (S.D. Tex. 2017) (denying preliminary injunction and rejecting argument that plaintiff's packaging variations "were included in its protectable trade dress because they all shared a 'family look'" where packaging had "inconsistently and broadly defined elements"; it was plaintiff's "burden to identify its claimed trade dress.  It has failed to do so with sufficient clarity or consistency.").[5]

In this case, Plaintiffs have never defined any "specific common elements" of their "family" or shown how those elements are consistently used across the styles comprising their family.  Indeed, Plaintiffs acknowledged an evolving and changing look when they changed their packaging styles.  (SUMF at 42.)  Plaintiffs' proof as to their original Yellow style packaging, even if it has acquired secondary meaning, does not make a family and does not show any common elements needed to establish a family in the first instance.  The lack of proof of the requisite

---

[5] Color is particularly problematic because "evidence submitted to demonstrate acquired distinctiveness of a color may show consumer recognition with respect to certain objects (e.g., blue vehicle rental centers), but not for other objects (e.g., blue rental cars)."  *In re Thrifty, Inc.*, 274 F.3d at 1353; *see also* Trademark Manual of Examining Procedure, Oct. 2018 version, Sec. 1202.05 ("A color takes on the characteristics of the object or surface to which it is applied, and the commercial impression of a color will change accordingly.") (citing *In re Thrifty, Inc.*, 274 F.3d at 1353).

common elements is a failure of proof as well.  *See Forney Indus., Inc.*, 835 F.3d at 1252. Summary judgment on Plaintiffs' trade dress claim is thus warranted on this ground also.[6]

### C.  Defendants' JawHorse Product Does Not Infringe Plaintiffs' Unregistered Trade Dress.

Plaintiffs continue to assert that the Jawhorse product infringes Plaintiffs' unregistered trade dress (*see* Dkt. 304 at 1), notwithstanding that this Court has stated that the unregistered trade dress claim is only about Defendants' packaging.  (Dkt 276 at 12.)  And contrary to the Court's requirement that Plaintiffs identify the evidentiary basis for their claims in the new trial (May 23, 2018 Transcript of Proceedings, at 7:22-8:22), Plaintiffs failed to identify any evidence to support an unregistered trade dress claim against the JawHorse product in their Statement of Claims for Trial, and instead identified only evidence directed to Defendants' packaging.  (*See* Dkt. 304 at 2-4 (recycling their corporate witness's unsupported opinions at prior trial about the similarity of the parties' *packaging* and speculation about consumer perceptions (*id.* at 5)).)  To the extent Plaintiffs persist with their vague references to "yellow and black", they must do more (including to show that any use of such colors on a particular product is not functional), in order to identify any protectable trade dress that would cover the JawHorse.  *See Solo Cup Operating Corp. v. Lollicup USA, Inc.*, No. 16 C 8041, 2017 WL 3581182, at *1 n.4 (N.D. Ill. Aug. 18, 2017) ("A product configuration mark protects distinctive, non-functional product designs").

Given this failure of proof, Defendants are entitled to summary judgment because Plaintiffs have failed to identify (much less provide any evidence of) a distinct unregistered product design

---

[6]  Plaintiffs have never suggested that they would attempt to proceed with only the Yellow style as the unregistered trade dress in the case. If Plaintiffs believed they had infringement claims based on their Yellow style packaging alone, they should have said so long before now and limited their evidence accordingly.  Indeed, in Plaintiffs' Statement of Claims "with evidentiary support" that they intend to assert in the new trial, Plaintiffs notably rely exclusively on photos of the Black Bar style of packaging juxtaposed with the sunburst packaging to support their assertion of a "confusingly overall similar impression between Plaintiffs' and Defendants' trade dress.  *See* Dkt. 304 at 1-4.

(or "product configuration") trade dress that could apply to the physical JawHorse product (as apart from any packaging). *See LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12-cv-9033, 2016 WL 5112020, at \*3 (N.D. Ill. Sept. 20, 2016) ("Trade dress protection for product designs is unusual, as 'almost invariably, even the most unusual of product designs, such as a cocktail shaker shaped like a penguin, is intended not to identify the source, but to render the product itself more useful or more appealing.'"); *Hartco Eng'g, Inc. v. Wang's Int'l, Inc.*, 142 F. App'x 455, 460-61 (Fed. Cir. 2005) (recognizing distinction between product packaging and product design trade dress claims, noting that "a *product* design cannot be inherently distinctive as a matter of law" and therefore, requires evidence of secondary meaning to be protected)*; Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 658 (7th Cir. 1995); *Solo Cup Operating Corp.*, 2017 WL 3581182, at \*1 n.4.

## IV.    CONCLUSION

Plaintiffs' quest for a monopoly on use of the colors yellow and black – in any form, configuration or amount, and on any product packaging and on any tool, without satisfying its *actual* burdens – must end.  The Court should grant Defendants' motion for summary judgment on Plaintiffs' registered trademark claim and Plaintiffs' unregistered trade dress claim.

Dated:  May 31, 2019                    Respectfully submitted,

                                        */s/ Brian D. Roche*
                                        Brian D. Roche
                                        Jennifer Y. DePriest
                                        Vanessa M. Heftman
                                        REED SMITH LLP
                                        10 South Wacker Drive, Suite 4000
                                        Chicago, Illinois 60606
                                        Tel:    (312) 207-2405
                                        Fax:    (312) 207-6400
                                        broche@reedsmith.com
                                        jdepriest@reedsmith.com

Robert J. Theuerkauf
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, KY 40202
rjt@middletonlaw.com

*On behalf of Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served by ECF on all known parties on this 31st day of May, 2019.

*/s/ Brian D. Roche*
Brian D. Roche
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Tel:    (312) 207-2405
Fax:    (312) 207-6400
broche@reedsmith.com
jdepriest@reedsmith.com

*On behalf of Defendants*