**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE BLACK & DECKER )
CORPORATION, BLACK & DECKER )
INC. and BLACK & DECKER (U.S.) )
INC., )
                               )      Case No. 11-cv-5426
         Plaintiffs, )
                               )      Judge Robert M. Dow, Jr.
      v. )
                               )
POSITEC USA INC. and RW DIRECT )
INC., )
                               )
         Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Black & Decker Corporation, Black & Decker Inc., and Black & Decker (U.S.) Inc. (collectively, "Plaintiffs") bring Lanham Act claims against Defendants Positec USA Inc. and RW Direct Inc. (collectively, "Defendants") for registered trademark infringement in violation of 15 U.S.C. § 1114 and trade dress infringement in violation of 15 U.S.C. § 1125(a). Currently before the Court is Defendants' motion for summary judgment [307]. For the reasons stated below, Defendants' motion [307] is granted in part and denied in part. Summary judgment is granted in favor of Defendants and against Plaintiffs on Plaintiffs' claim for registered copyright infringement to the extent that claim is based on Defendants' "sunburst" packaging. Summary judgment is otherwise denied. This case is set for status hearing on April 22, 2020 at 10:00 a.m.

I. **Background**

The following facts are taken from the parties' Local Rule 56.1 statements, [310], [313], [315], and are undisputed except where a dispute is noted. Plaintiffs assert claims against Defendants' yellow and black "sunburst" packaging and Defendants' Rockwell brand "JawHorse"

product for registered trademark infringement in violation of 15 U.S.C. § 1114 and unregistered trade dress infringement in violation of 15 U.S.C. § 1125(a). The sunburst packaging and JawHorse product are described further below.

Plaintiffs' registered trademark infringement claim is based on the "family" of Plaintiffs' registered marks that have been submitted as Defendants' Exhibit 7. See [310-8]. Plaintiffs "define their asserted family of registered trademarks as the colors yellow and black on power tools, power tool accessories, and the packaging for the same." [313] at 4-5. The registered marks cover the following classifications of goods: "power operated tools and machines," "electric power tools having an electric motor or other driving system," "power tools," "electric power tools having an electric motor or other electric driving system," accessory items like saw blades or battery charges "for use in connection with electronically powered saws" or "for use with electric power tools," and "power tool cases made of plastic sold with a power tool." *Id.* at 3-4.[1] Plaintiffs' unregistered trade dress infringement claim is based on a "family" of trade dress composed of the use of a black and yellow color scheme on Plaintiffs' DeWalt power tools, power tool accessories, and packaging.

Plaintiffs have used three variations of yellow and black packaging during the time period relevant to the complaint. (Plaintiffs object to Defendants' characterization of these variations as three distinct "styles"). Plaintiffs introduced their "predominantly yellow" variation in 1992, consisting of a yellow box with black text and a black illustration of the tool. See [310-13]. Plaintiffs introduced their "black bar" variation in late 2008 or 2009. See [310-14]. The black bar variation is a yellow box with a black top and black bars at the top and bottom, black or yellow

---

[1] Plaintiffs dispute Defendants' statement that "Plaintiffs' registered trademarks do not state that they are 'for' power tool packaging or power tool accessory packaging," [313] at 4; however, Plaintiffs do not identify anything in the record contradicting Defendants' statement.

text (depending on its positioning over the black or yellow background colors), and a black illustration of the tool. Plaintiffs introduced their "predominantly black with photograph" variation in approximately 2010 or 2011. See [310-15]. That variation uses a predominantly black box with yellow bars on the sides, black or yellow text (depending on its positioning over the black or yellow background colors), a yellow, black and gray illustration of the tool, and gray and silver accents.

Defendants began using their yellow and black (or "green-gray") sunburst design on packaging for their Rockwell power tools and power tool accessories sometime in 2009 or 2010; the exact date is in dispute, as discussed in the analysis section below. Prior to introducing the sunburst packaging, Defendants used another packaging style, which had black and yellow caution tape across the box. According to Positec's Vice President of Marketing Craig Taylor, Defendants' new sunburst packaging used the same green-gray color used in Rockwell tools. Plaintiffs dispute that the packaging is green-gray and instead characterize it as black. According to Taylor, the Rockwell packaging was different from other packaging in the marketplace because it had a two-color background; it had a dimensional, floating tool with the Rockwell logo underneath it; and it used a four-color package and a four-color process to get an accurate photograph on the package—a more expensive process that would "make the box brighter and stand out with a higher quality look." [313] at 21.

Defendants' JawHorse product is a non-power portable work support product with a hands-free clamping device that can hold hardware or equipment on which the user is working. See [313] at 8. Although it is not powered, the owners' manual for the JawHorse refers to it in several places as a "power tool." [315] at 19. It is disputed whether Plaintiffs have sold work stands that look and operate like Defendants' JawHorse. See [313] at 41.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

III.    **Analysis**

A.      **Registered Trademark Infringement**

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co*., 267 F.3d 628, 638 (7th Cir. 2001); see also 15 U.S.C. § 1114. The Seventh Circuit has recognized that a claim for trademark infringement may be premised on a "family of marks," which is "a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002) (quoting *McDonald's Corp. v. Druck & Gerner, DDS., P.C.,* 814 F. Supp. 1127, 1131 (N.D.N.Y. 1993)). "A family of marks exists only if and when 'the purchasing public recognizes that the common characteristic is indicative of a common origin of the goods.'" *Id.* (quoting *Han Beauty, Inc. v. Alberto-Culver Co.,* 236 F.3d 1333, 1336 (Fed. Cir. 2001)). Thus, "[t]o prevail at trial on [a] trademark infringement claim" based on a family of trademarks, the plaintiff is required "to prove that its family of marks is distinctive" and that the defendant's allegedly infringing product "is likely to cause consumers to believe mistakenly that [its product] is manufactured, sponsored, or endorsed by, or affiliated or connected with," the plaintiff's brand. *Id.* at 805. "Whether a family of marks exists is an issue of fact based on the common formative component's distinctiveness, the family's use, advertising, promotion, and inclusion in [the] party's other marks." *Id.* at 815 (citing *McDonald's Corp. v. McBagel's, Inc.,* 649 F. Supp. 1268, 1271 (S.D.N.Y. 1986)).

Plaintiffs allege that Defendants have violated their registered trademarks under a "family of marks" theory by selling: 1) a JawHorse product that uses the same yellow and black color scheme that Plaintiffs use in the products covered by their registered trademarks; and 2) Rockwell tools in packaging that uses the same yellow and black color scheme that Plaintiffs use in their registered trademarks. Defendants argue that they are entitled to summary judgment on Plaintiffs' registered trademark infringement claim as to both the sunburst packaging and the JawHorse.

### 1. Sunburst Packaging

Defendants contend that Plaintiffs' registered trademark claim based on the sunburst packaging fails as a matter of law because, to the extent Plaintiffs have a "family" of registered trademarks with a common characteristic, that common characteristic is unrelated to packaging. The Court agrees and therefore grants summary judgment to Defendants on the registered trademark claim to the extent that claim is based on Defendants' sunburst packaging.

Plaintiffs "define their asserted family of registered trademarks as the colors yellow and black on power tools, power tool accessories, and the packaging for the same." [313] at 4-5. However, a review of the registered marks, see [310-8], shows that they all relate to specific uses of yellow and black on defined components of power tool and power tool accessories or in the DeWalt logo. None of the marks relate to the use of yellow and black on packaging. Although Plaintiffs dispute Defendants' statement that the "registered trademarks do not state that they are 'for' power tool packaging or power tool accessory packaging," [313] at 4, Plaintiffs do not identify anything in the record showing that the registered marks have anything to do with packaging. The only trademarks that are at all related to packaging are for "power tool cases made of plastic sold with a power tool." *Id.* at 3. Plastic power tool cases are not at issue here. Nor are any of the other classifications of goods that are covered by the registered marks: "power operated

tools and machines," "electric power tools having an electric motor or other driving system," "power tools," "electric power tools having an electric motor or other electric driving system," or accessory items like saw blades or battery charges "for use in connection with electronically powered saws" or "for use with electric power tools." *Id*.

Plaintiffs have not identified any case law that extends the "family" of registered marks theory as far Plaintiffs seek to do here. Plaintiffs rely on the "related goods" theory, arguing that "it is well established in the Seventh Circuit that a likelihood of confusion exists when a plaintiff's and a defendant's products are not identical but are sufficiently related to create an inference in consumers' minds that the products came from the same source—or are thought to be affiliated with, connected with, or sponsored by, the trademark owner." [312] at 30-31 (citing *Sands, Taylor & Wood Co. v. The Quaker Oats Co*., 978 F.2d 947, 958 (7th Cir. 1992) ("Modern trademark law prohibits use of a senior user's mark not only on products that are in direct competition with those of the senior user but also on products that are considered to be 'closely related' to the senior user's."). Plaintiffs explain that one of the reasons for this rule is "to protect the owner's ability to enter product markets in which it does not now trade but into which it might reasonably be expected to expand in the future." [312] at 31 (citing *Sands, Taylor*, 978 F.2d at 958).

Plaintiffs have identified what might be a good reason for finding that the "family" created by Plaintiffs' registered trademarks also covers the JawHorse—a type of *product* that Plaintiffs may conceivably want to sell themselves using their black and yellow color scheme. But this is not a compelling justification for extending any "family" protected by the registered marks beyond closely related products to cover whatever *packaging* Plaintiffs decide to use. All of the cases cited by Plaintiffs in support of their "related goods" theory involve products or related services, not packaging. See [312] at 31 (citing *CAE, Inc*., 267 F.3d at 681 (finding likelihood of confusion

where the senior user's use of its federally registered trademark on testing and measuring equipment could be naturally expanded into the junior user's field of air pollution testing and monitoring services); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc*., 846 F.2d 1079, 1089 (7th Cir. 1988) (use of INTERNATIONAL KENNEL CLUB mark on toy dogs likely to cause confusion as to source with International Kennel Club of Chicago, a sponsor of purebred dog shows)).

The Court will not strain the boundaries of a registered trademark claim in the manner urged by Plaintiffs, when Plaintiffs are already pursuing a claim for unregistered trade dress infringement based on their packaging. Allowing Plaintiffs to frame the same claim as a registered trademark infringement claim based on a family of trademarks that have nothing to do with packaging unnecessarily muddles the legal analysis and likely would lead to juror confusion as well. Therefore, the Court will enter summary judgment for Defendants on Plaintiffs' claim for registered trademark infringement to the extent that claim is based on Defendants' sunburst packaging.

### 2. JawHorse

Defendants argue that they are also entitled to summary judgment on Plaintiffs' registered trademark infringement claim to the extent the claim is based on Defendants' JawHorse product, because the JawHorse is not closely related to power tools or power tool accessories, nor is it closely related to the particular items depicted in Plaintiff's registered trademarks.

As noted above (and as Defendants acknowledge, see [308] at 17-18), "[m]odern trademark law prohibits use of a senior user's mark not only on products that are in direct competition with those of the senior user but also on products that are considered to be 'closely related' to the senior user's." *Sands, Taylor*, 978 F.2d at 958 (quoting *Int'l Kennel Club*, 846 F.2d at 1089); see also

*IPOX Schuster, LLC v. Nikko Asset Management Co., Ltd.*, 304 F .Supp. 3d 746, 762 (N.D. Ill. 2018) ("Modern trademark law protects 'closely related products,' such as beer and whiskey, linens and perfume, dog toys and dog shows, and liquor and restaurants"). A "closely related" product is one "which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Sands, Taylor*, 978 F.2d at 958.

As Defendants frame the issue, "whether Plaintiffs' registered marks can extend to cover Defendants' non-powered JawHorse product depends on whether Plaintiffs can prove that a non-powered work support product with a clamping device such as the JawHorse is 'closely related' to the power tools and power tool accessories covered by Plaintiffs' registered marks." [308] at 18. Based on the record provided by the parties, the Court concludes that a jury must decide whether Defendants' black and yellow JawHorse is so distinctively like the power tools and power tool accessories depicted in the registered trademark that someone who saw them reasonably would think they came from the same source. The JawHorse itself is not a power tool, although a reasonable juror might conclude that Defendants themselves believe it is "close enough" to be considered one since they refer to the JawHorse as a "power tool" in several places in their owners' manual. It is undisputed that "[t]the JawHorse is a non-power portable work support product with a hands-free clamping device that can hold hardware or equipment on which the user is working." [313] at 8. Although the parties do not go into any detail about the type of "work" that can be done using the JawHorse, the "JawHorse Example Uses" document included with Defendants' Local Rule 56.1 statement shows the JawHorse being used, among other ways, to hold a door in place while mounting a hinge using a power drill; to hold a 4x4 while drilling through it with a power drill; and to hold lumber and PVC piping while cutting through those materials with power

saws.  See [310-16] at 4, 6, 12-13.  Plaintiff's registered trademarks include a variety of power

drills and power saws, similar to those depicted as being used to drill and saw through materials

clamped to the JawHorse.  See, e.g., [310-8] at 5, 7, 9, 16, 25, 37, 39.  In their briefs, Defendants

do not acknowledge these promoted uses of the JawHorse in conjunction with power tools.

*J & J Snack Foods Corp. v. McDonald's Corp*. provides a useful comparison.  There,

McDonalds asserted a family of marks in which "the 'Mc' formative is combined with a generic

name, including the marks McDONUT for doughnuts, McPIZZA for a pizza product, and

McMUFFIN, McCHICKEN and McRIB for sandwich-type products, all used in commerce before

J & J's use of McPRETZEL and McDUGAL McPRETZEL."  932 F.2d 1460, 1461 (Fed. Cir.

1991).  J & J Snack Foods argued that its McPRETZEL mark was "not confusingly similar to any

single mark registered or used by McDonald's" because McDonald's had never registered or used

any pretzel food product in its lineup.  *Id*. at 1461-62.  The court nonetheless found that confusion

was likely because of the strong family of marks that McDonald's had achieved in connection with

its "Mc" product lines.  *Id*. at 1462-64.  Here, by comparison, Plaintiffs' theory is that although

their registered trademarks do not include a work stand similar to the JawHorse, the strong family

of marks that Plaintiffs have achieved in connection with their yellow and black line of power

tools and power tool accessories makes it likely that a consumer would be confused about the

origin of Defendants' yellow and black JawHorse, which is closely related to and used in

conjunction with power tools that make up the family of registered marks.  Finally, contrary to

Defendants' contention, it is disputed whether Plaintiffs have sold work stands that look and

operate similar to Defendants' JawHorse.  See [313] at 41.  In short, the Court cannot say based

on the record before it that no reasonable jury could conclude that the JawHorse is "closely related"

to power tools, including in particular ones depicted in Plaintiffs' registered trademarks.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' claim for registered trademark infringement is denied to the extent that claim is based on Defendants' JawHorse product.

### B.    Trade Dress Infringement

"The Lanham Act establishes a cause of action against any 'person who ... in connection with any goods or services" uses "any word, term, name, symbol, or device' which 'is likely to cause confusion' as to the good or service's source." *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017) (quoting 15 U.S.C. § 1125(a)(1)(A)). "That protection can extend to 'trade dress,' such as the design or packaging of a product that is so distinctive as to identify the manufacturer or source." *Id.* (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 608 (7th Cir. 1986)); see also *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 936 (7th Cir. 1989) ("Trade dress encompasses the overall appearance of a product, including its size, color or color combinations, texture, graphics, packaging or other visual features.").

"To obtain relief for trade dress infringement under 15 U.S.C. § 1125(a), a party must show that (1) its trade dress is protectable, and (2) the trade dress of the accused product is confusingly similar." *RNA Corp. v. Procter & Gamble Co.*, 747 F. Supp. 2d 1008, 1016 (N.D. Ill. 2010) (citing *Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1151 (7th Cir. 1994)). A plaintiff will satisfy the first element, protectable trade dress, by establishing "either that its trade dress is inherently distinctive or that it has acquired a secondary meaning." *Badger Meter*, 13 F.3d at 1151. A "secondary meaning" is "a mental association in buyers' minds between the alleged mark and a

single source of the product." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992) (internal quotation marks and citation omitted).

In their amended complaint, Plaintiffs allege that Defendants' "selection and use of substantially similar colors, graphics, looks and appearances for its power tool products and packaging is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of [Defendants'] Infringing Goods" and lead the public "to believe that [Defendants'] products are in some way affiliated or associated with, or sponsored by, Plaintiffs." [50] at 18-19.

### 1. Packaging

Defendants argue that, as a matter of law and undisputed fact, Plaintiffs have not established secondary meaning for a "family" of trade dress based on their packaging. According to Defendants, "each style of product or packaging that comprises the 'family' must be protectable at the time a purported infringer enters the market." [308] at 20 (capitalization modified). Defendants claim that they are entitled to summary judgment because the undisputed record shows that Plaintiffs' black bar packaging style was not in wide use and their predominately black style was not in use at all when Defendants entered the market with their sunburst packaging.

Defendants go too far in asserting that "each style" of a family of trade dress must have established secondary meaning when the alleged infringer enters the market. In *AM General Corp.*, the Seventh Circuit, considering a claim for infringement of an unregistered family of trade dress, held: "General Motors can't be said to have infringed a family of marks that did not exist when its grille entered the market, or at least had not acquired secondary meaning when the General Motors grille entered the market. If DaimlerChrysler marketed only one member of the 'family' when General Motors entered the market, there was no family even if DaimlerChrysler intended to add other products to the family." 311 F.3d at 819. Thus, "the proponent of a family

of marks must prove that, prior to the junior user's entry, *all or many of the marks in the alleged family* were used and promoted in such a way as to create public perception of the family mark as an indicator of source." *Id*. (emphasis added).

In *McDonald's Corp. v. McKinley*, 1989 WL 274414 (Trademark Tr. & App. Bd. Sept. 25, 1989), which the Seventh Circuit cites with approval in *AM General Corp.*, 311 F.3d at 819, the Patent and Trademark Office ("P.T.O.") Trademark Trial and Appeal Board explained that "it is not necessary, to support the family of marks theory, that all members of the 'family' be in existence prior to the entry in the field of another with a mark containing that common portion." *McDonald's Corp.*, 1989 WL 274414, at *5. Instead, "[w]here the evidence establishes that there is a family of marks characterized by the common portion, that family characteristic is protected to the extent of other such marks which are later added to the family even though there may be an intervening use." *Id.*

In this case, it is undisputed that at least *some* of the marks in Plaintiffs' alleged family of yellow and black trade dress were in use by the 2009/2010 time frame when Defendants began using their sunburst packaging. The predominately yellow packaging has been in continuous use since 1992. Defendants contend that this is not enough, however, because the "Predominantly Black with Photograph packaging style … was not in use at all until after Defendants' entry into the market with the sunburst packaging in May 2009" "[a]nd to the extent there is evidence that the Black Bar style … had been used in some limited fashion before May 2009, when Defendants' 'sunburst' packaging entered the market, there is no evidence that this 'Black Bar' style of packaging … had acquired secondary meaning within that minimal time period." [308] at 22.

These arguments cannot be resolved at summary judgment. As an initial matter, Defendants have not sufficiently tied down the relevant dates. There is a material factual dispute

concerning when Defendants began using the sunburst packaging. Defendants claim that was in May 2009, but Defendants' Vice President of Marketing, Craig Taylor, testified at his deposition (but changed his testimony at trial) that the sunburst packaging was introduced in late 2009 or early 2010, which is consistent with Defendants' interrogatory response. See [313-1] at 598, 729-30. It is also unclear from the record when Plaintiffs' black bar style was first used. According to Defendants' Local Rule 56.1 Statement, Plaintiffs' "black bar style of packaging … 'was incepted in 2008 or 2009' and would have gone to market in the 2008/2009 time frame." [313] at 15. Viewing these disputed dates in the light most favorable to Plaintiffs, this would have given the black bar style of packaging well over a year to develop secondary meaning before Defendants' sunburst packaging hit the market.

While Defendants cite two cases in which similar periods were found insufficient to establish secondary meaning, they were in different procedural postures and involved their own unique facts, which Defendants do not discuss. See *Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*, 667 F. Supp. 1221 (N.D. Ill. 1987) (for purpose of obtaining injunctive relief, camera manufacturer failed to establish likelihood of success of claim that consumers who had seen its cameras or had seen its advertising and publicity relating to the camera made association between trade dress consisting of combinations of contrasting colors and producer of cameras, where use of trade dress was only for period of 14 months); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) ("[W]hile not impossible, it is difficult for a product to acquire secondary meaning during an 18–month period."). Further, there is a reasonable argument that this case is unique because Plaintiffs' black bar style was building off of the secondary meaning already established by Plaintiffs' longstanding and extensive use of a

yellow and black color scheme on its tools and predominately yellow packaging and in advertising and promotional activities.

Defendants also challenge the sufficiency of the evidence concerning when the black bar style acquired secondary meaning. Defendants note that "Plaintiffs' new purported 'secondary meaning' survey only tested a cropped image of the front of a Yellow style package, and did not address either the Black Bar or Predominantly Black with Photograph styles." [308] at 22, n.4. Assuming for the sake of argument that this means the survey has no relevance to the secondary meaning of Plaintiffs' latter two packaging styles, there are many other ways a party may establish secondary meaning, including "direct consumer testimony, … length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Sys.*, 975 F.2d at 393. Plaintiffs' brief provides an extensive discussion of their evidence on these other factors, see [312] at 16-20, 27, which the Court finds unnecessary to repeat in detail here. Among other things, Plaintiffs point to evidence that "with full knowledge that DeWalt had trademark and trade dress rights in the yellow and black color scheme and that DeWalt was the market leader in power tools, Defendants introduced their copycat yellow and black packaging to be sold side-by-side with DeWalt at retail," which according to Plaintiffs "shows that Defendants intentionally tried to create confusion so as to trade off of DeWalt's iconic reputation." *Id.* at 27.

In their reply brief, Defendants address only the survey evidence and advertising/promotion expenses. Defendants argue that Plaintiffs should not be allowed to rely on "advertising and promotion on power tools" as evidence that "their *packaging* 'family' has secondary meaning." [314] at 9. This strikes the Court as unnecessarily limiting the inferences that a jury may (or may not) reasonably and logically draw from the evidence as a whole. As the Court explained in its opinion on the parties' post-trial motions following the first trial, Plaintiffs

provided extensive testimony "concerning their advertising and sales and their relation to Plaintiffs' use of the yellow and black color scheme." [276] at 16. "For instance, the jury heard not just that Plaintiffs used the color scheme in a few advertisements, but that Plaintiffs had used it extensively for years in its print advertisements, in-store merchandising, and 'yellow and black payback program,' that Plaintiffs sent out promotional yellow and black 'swarm vans' with sales representatives dressed in yellow in black, and that Plaintiffs sponsored a NASCAR team that drove a yellow and black car." *Id*. at 17. "Plaintiffs also introduced sales figures showing that their DeWalt sales increased from $120 million in 1992—when they began heavily promoting DeWalt using a yellow and black color scheme—to $1 billion in 2003 and $3 billion in 2015." *Id.* The Court concluded in its prior opinion, and is not inclined to change its view here, that a rational jury could find that "Defendants' extensive advertising and promotional activities caused consumers to associate yellow and black trade dress with DeWalt and contributed to DeWalt's substantial growth in sales." *Id*.

For these reasons, Defendants' motion for summary judgment on Plaintiffs' claim for trade dress infringement is denied to the extent that claim is based on Defendants' sunburst packaging.

### 2.    JawHorse

Defendants argue that they are entitled to summary judgment on Plaintiff's trade dress infringement claim to the extent the claim is based on Defendants' JawHorse because "Plaintiffs failed to identify any evidence to support an unregistered trade dress claim against the JawHorse product in their Statement of Claims for Trial" and "[t]o the extent Plaintiffs persist with their vague references to 'yellow and black', they must do more (including to show that any use of such colors on a particular product is not functional), in order to identify any protectable trade dress that would cover the JawHorse." [308] at 25.

This argument is not well developed by either party. Based on what the Court is able to ascertain from the briefs and the record, summary judgment is denied. The Statement of Claims for Trial states that Plaintiff's unregistered trade dress claim is based both on Defendant's JawHorse product and the sunburst packaging. See [304] at 1. The photos included in the statement show both packaging and tools in a black and yellow color scheme at hardware stores. See *id.* at 2-4. Plaintiff also asserts in the statement that "for almost 20 years before Defendants even existed, Plaintiffs were selling drills, saws, and a multitude of different power tools and accessories in DeWalt's yellow and black color scheme." *Id.* at 5. Beyond providing a number of string cites of unexplained relevance, Defendants fail to demonstrate why, as a matter of law, Plaintiffs will be unable to establish a "family" of unregistered trade dress based on the use of a yellow and black color scheme on their power tools and power tool accessories.

## IV.   Conclusion

For these reasons, Defendants' motion for summary judgment [307] is granted in part and denied in part. Summary judgment is granted in favor of Defendants and against Plaintiffs on Plaintiffs' claim for registered copyright infringement to the extent that claim is based on Defendants' "sunburst" packaging. Summary judgment is otherwise denied. This case is set for status hearing on April 22, 2020 at 10:00 a.m.

Dated: March 23, 2020

Robert M. Dow, Jr.
United States District Judge