**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC. and BLACK & DECKER (U.S.) INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11-cv-5426 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| POSITEC USA INC. and RW DIRECT INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Black & Decker Corporation, Black & Decker Inc., and Black & Decker (U.S.) Inc. (collectively, "Plaintiffs") bring suit against Defendants Positec USA Inc. and RW Direct Inc. (collectively, "Defendants") for trademark infringement under 15 U.S.C. § 1114 (Count II) and trade dress infringement under 15 U.S.C. § 1125(a) (Count IV). Currently before the Court is Defendants' motion [321] for certification of interlocutory appeal under 28 U.S.C. § 1292(b). For the reasons that follow, Defendants' motion [321] is denied.

**I.      Background**

The background of this trademark case, knowledge of which is assumed, is set forth in the Court's Memorandum Opinion and Order [317] granting in part and denying in part Defendants' motion for summary judgment. Plaintiffs assert claims against Defendants' yellow and black "sunburst" packaging and Defendants' Rockwell brand "JawHorse" product (a non-power portable work support with hands-free clamping device) for registered trademark infringement in violation of 15 U.S.C. § 1114 and unregistered trade dress infringement in violation of 15 U.S.C. § 1125(a).

Defendants' motion concerns primarily Plaintiffs' claims based on the "sunburst" packaging. Defendants began using their yellow and black (or "green-gray") sunburst design on packaging for their Rockwell power tools and power tool accessories sometime in 2009 or 2010 (Defendants have not pinned down the date that their packaging actually went on the market). Defendants' "sunburst" packaging is alleged to infringe three of Plaintiffs' packaging styles. Plaintiffs introduced their "predominantly yellow" variation in 1992, consisting of a yellow box with black text and a black illustration of the tool. Plaintiffs introduced their "black bar" variation in late 2008 or 2009. The black bar variation is a yellow box with a black top and black bars at the top and bottom, black or yellow text (depending on its positioning over the black or yellow background colors), and a black illustration of the tool. Plaintiffs introduced their "predominantly black with photograph" variation in approximately 2010 or 2011. That variation uses a predominantly black box with yellow bars on the sides, black or yellow text (depending on its positioning over the black or yellow background colors), a yellow, black and gray illustration of the tool, and gray and silver accents. Examples of the three styles of packaging, in order, are shown below, see [230] at 48-49:







In the opinion that Defendants seek leave to appeal, the Court granted summary judgment in favor of Defendants on Plaintiffs' claim for registered copyright infringement, to the extent that claim is based on Defendants' "sunburst" packaging, because none of the registered marks submitted by Plaintiffs "relate to the use of yellow and black on packaging." [317] at 6. The Court concluded that "[a]llowing Plaintiffs to frame the same claim as a registered trademark infringement claim based on a family of trademarks that have nothing to do with packaging unnecessarily muddles the legal analysis and likely would lead to juror confusion as well." *Id*. at 8. The Court denied summary judgment on the registered copyright infringement claim to the

extent the claim is based on the JawHorse, because "[t]he Court cannot say based on the record before it that no reasonable jury could conclude that the JawHorse is 'closely related' to power tools, including in particular ones depicted in Plaintiffs' registered trademarks." *Id.* at 10.

The Court also denied summary judgment to Defendants on the unregistered trade dress infringement claim based on packaging. The Court rejected Defendants' argument that Plaintiffs could not establish that its "family" of trade dress for packaging had established secondary meaning by the time Defendants entered the market with their sunburst packaging. The Court explained that "'the proponent of a family of marks must prove that, prior to the junior user's entry, all or many of the marks in the alleged family were used and promoted in such a way as to create public perception of the family mark as an indicator of source.'" [317] at 12-13 (quoting *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 819 (7th Cir. 2002)). There were disputed questions of fact concerning whether "many" of Plaintiffs marks had established secondary meaning by the time Defendants began using the "sunburst" packaging, because "there is a material factual dispute concerning when Defendants began using the sunburst packaging" (May 2009 versus late 2009 or early 2010) and it was not clear when Plaintiffs' began using their second, "black bar" style of packaging, which could have been as early as 2008. *Id*. at 14-15. Under these facts, a reasonable jury could find that two out of three of the packaging designs—or "many" of the members of the claimed family—had acquired secondary meaning by the time the "sunburst" packaging was introduced. If

The Court further determined that Plaintiffs had sufficient evidence that its "family" of trade dress had acquired secondary meaning by the time Defendants began using the "sunburst" packaging. The Court explained that "there are many other ways a party may establish secondary meaning, including 'direct consumer testimony, … length and manner of use, amount and manner

4

of advertising, volume of sales, place in the market and proof of intentional copying.'" [317] at 15 (quoting *Spraying Sys.*, 975 F.2d at 393). The Court then identified specific evidence on several of these factors, including a secondary meaning survey showing (according to Defendants' description) "a cropped image of the front of a Yellow style package." [317] at 15. As to proof of intentional, rather than innocent, copying, Plaintiffs submitted evidence that, "with full knowledge that DeWalt had trademark and trade dress rights in the yellow and black color scheme and that DeWalt was the market leader in power tools, Defendants introduced their copycat yellow and black packaging to be sold side-by-side with DeWalt at retail." *Id*. The Court agreed with Plaintiffs that one reasonable inference that could be drawn from this evidence is that "Defendants intentionally tried to create confusion so as to trade off of DeWalt's iconic reputation." *Id*. The Court also pointed the reader to Plaintiffs' extensive discussion of additional evidence going to other factors. See [317] at 15 (citing [312] at 16-20, 27).

      The Court rejected Defendants' argument that Plaintiffs' survey evidence and advertising and promotional expenses were irrelevant because they were not specific to Plaintiffs' packaging. The Court instead looked more broadly to Plaintiffs' use of a yellow and black color scheme throughout their advertising, merchandising, and promotional activities for decades, something that was viewed as "ground-breaking" at the time. See [312] at 17 (citing 1995 Harvard business school cased study; Business Week article). The Court concluded that "a rational jury could find that Defendants' extensive advertising and promotional activities caused consumers to associate yellow and black trade dress with DeWalt and contributed to DeWalt's substantial growth in sales." [317] at 16. Finally, the Court allowed Plaintiffs' trade dress infringement claim based on the JawHorse to proceed, due to the parties' failure to develop that issue in any detail. See *id*. at 17.

5

Currently before the Court is Defendants' motion to certify the order denying summary judgment in part for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.     Legal Standard

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an otherwise non-appealable order for interlocutory appeal if it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  See also *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1708 (2017).  "The court of appeals may then, "in its discretion, permit an appeal to be taken from such order." *Id*.  An appeal under 28 U.S.C. § 1292(b) does "not stay proceedings in the district court unless the district judge or the Court of Appeals" orders.

"A district court may only certify an issue under Section 1292(b) if it turns 'on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record.'"  *U.S. Commodity Futures Trading Commission v. Kraft Foods Group, Inc.*, 195 F. Supp. 3d 996, 1002 (N.D. Ill. 2016) (quoting *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000)).  This normally means "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine."  *Ahrenholz*, 219 F.3d at 676.  The "denial of summary judgment is a paradigmatic example of an interlocutory order that normally is not appealable," according to the Seventh Circuit.  *Id*.; cf. also *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 738 (N.D. Ill. 1977) ("permission to take an interlocutory appeal should be granted sparingly and with discrimination").  An immediate appeal is said to materially advance the ultimate termination of the litigation if it "will expedite rather than protract the resolution of the case."  *U.S. Commodity Futures Trading Commission*, 195 F.

Supp. 3d 996 at 1005 (citing *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012)).

### III. Analysis

Defendants argue that their appeal from the Court's latest partial denial of summary judgment would present a "controlling question of law" concerning the "applicable legal standards for establishing a family of unregistered trade dress." [322] at 5 (capitalization modified). "'Trade dress' refers to the total image of a product, including features such as 'size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1067 (7th Cir. 1992) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989)); see also *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 635–36 (7th Cir. 1999). According to Defendants, there are substantial grounds for disagreement on at least three legal issues addressed in the Court's summary judgment ruling. See [322] at 6.

First, Defendants assert that "a family of unregistered trade dress encompassing the undefined use of colors across both packaging and product design is not legally protectable." [322] at 6 (capitalization modified). According to Defendants, the unregistered trade dress must be specifically defined with a stabile visual appearance, *id.* at 7, and the Court must differentiate between and separately address product design and product packaging, see *id.* at 8. In this section of their brief, *id.* at 6-10, Defendants discuss the applicable legal standards, but do not identify anything in particular that the Court got wrong in its summary judgment opinion. The Court has recognized that "[o]ne claiming family trade dress protection must articulate a specific trade dress and demonstrate that it has consistently used that trade dress[.]" [276] at 15. And it has explained that "'[w]hether a family of marks' (or trade dress) 'exists is an issue of fact based on the common

7

formative component's distinctiveness, the family's use, advertising, promotion, and inclusion in [the] party's other marks.'" *Id.* (quoting *AM Gen. Corp.*, 311 F.3d at 815); see also [317] at 5. In its motion granting a new trial, the Court determined based on the trial record that "a rational jury could conclude based on the packaging that Plaintiffs entered into evidence that Plaintiffs' two forms of packaging had a consistent overall look—the predominantly yellow package with black in the DeWalt name, tool picture and text; and the predominately black package with yellow side panels and DeWalt name and black text and graphics." [276] at 16; see also [230] at 48-49. In other words, the Court articulated the specific trade dress to which Plaintiffs claim protection, and concluded that Plaintiffs had sufficient evidence to take the issue to a jury. Ultimately, a jury could find that Plaintiffs' different packaging styles are not similar enough to establish a family, or that secondary meaning was not established as to "most or all" of the packaging designs when Defendants' "sunburst" packaging hit the market. But there is no abstract, contested, or controlling question of law for the Federal Circuit to resolve—just second guessing whether Plaintiffs "ha[ve] raised a genuine issue of material fact." This is not a proper basis for an interlocutory appeal. See *Ahrenholz*, 219 F.3d at 676 ("question of law" as used in § 1292(b) does not mean "whether the party opposing summary judgment has raised a genuine issue of material fact").

Second, Defendants explain that under applicable case law, Plaintiffs must provide "proof that the family existed prior to the first infringing use, such that all or most of the family members were in use and had acquired secondary meaning by that time." [322] at 10. There is no disagreement on this point, which the Court made itself, quoting the same case as Defendants. See *id.*; [317] at 12-13 (quoting *AM General Corp.*, 311 F.3d at 819). Defendants argue that Plaintiffs failed to satisfy this standard in opposing summary judgment, because "Black & Decker did not present any evidence that its later, predominantly black packaging trade dress had acquired

secondary meaning before Positec's first use of the accused sunburst packaging." *Id*. at 11. But this is a highly fact-specific inquiry concerning the sufficiency of the evidence, which is not an appropriate basis for an interlocutory appeal. See *Ahrenholz*, 219 F.3d at 676. Even if it were, Defendants do not discuss Plaintiffs' evidence or identify any particular factual errors made by the Court in assessing the evidence. The Court concluded, and continues to believe, that Defendants were not entitled to summary judgment because Plaintiffs have evidence that two out of three of their packaging styles had acquired secondary meaning by the time Defendants' "sunburst" packaging entered the market—which a reasonable jury could find satisfies *AM General Corp.*'s standard.

Defendants have not cited any cases suggesting the Court's analysis was incorrect as a matter of law. The Court's summary judgment ruling (and earlier related rulings) do not allow Plaintiffs to "preempt the use of the colors" yellow and black on packaging for power tools and power tool accessories, but rather protect "the particular combination of these colors, arranged in a particular" manner, with black or yellow panels with contrasting yellow or black text and graphics of the tool. *In re Forney Industries, Inc.*, 955 F.3d 940, 947, 2020 WL 1696314, at *5 (Fed. Cir. 2020). The cases on which Defendants rely for the proposition that more specificity is required involved very different facts. For instance, in *Regal Jewelry Co. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477 (S.D.N.Y. 1998)—the case from which the "articulate a specific trade dress" language originates—the plaintiff argued that "varying shades of gray [we]re within [its] trade dress" for packaging, but its officers testified at trial that its "theme color" was a "particular teal gray color." *Id.* at 488. The plaintiff failed to show "that it has consistently applied any single avowed theme trade dress to the packages of its products" because, for instance, of the six products presented in the suit, one contained no shade of teal gray or gray; one contained a "full bleed"

9

photograph of the product covering the entire front and back panels of the packaging, unlike the other boxes that had a photo on the two largest sides of the box; and another used two different package designs, one of which did not use the theme color. *Id*. at 487-88. The plaintiff's box design also was found to be unprotectable because it was so similar to those used by other manufacturers and thus generic. See *id.* at 489 (noting that "Regal's use of box designs are extremely similar to those of the other manufacturers, Regal is not using a design or color combination that has become a singular custom in the industry"). The plaintiff's owner and president also admitted at trial that the "sales for many of its products have actually declined" since the "theme color" trade dress had been introduced. See *id*. at 490. The facts here are very different. The images of Plaintiffs' packaging show that Plaintiffs' packaging styles all use a yellow and black color scheme and contain an image of the tool on the front panel. Plaintiffs have also presented evidence that their sales went up tremendously after they began using the yellow and black color scheme throughout their packaging, tools, and marketing.

In *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997), see [322] at 7, 9, the plaintiff sought trade dress protection for a line of outdoor furniture, but failed to include a description of the furniture in its complaint and failed to offer evidence "indicat[ing] what unique combination of features" in the ten items in the furniture line were "inherently distinctive[,] i.e., likely to be perceived by consumers as bearing the stamp of their maker." *Landscape Forms*, 113 F.3d at 381-82. Instead, the plaintiff offered abstract descriptions of the furniture, such as that it appeared "substantial" yet "light," or "is at once massive, yet appears to float." *Id*. at 382. Further, the plaintiff's descriptions applied only to "some, but not all, of the ten items in the [furniture] line." *Id*. Here, by contrast, Plaintiffs' description of their trade dress— the use of the color combination yellow and black on packaging for power tools and power tool

10

accessories—is concrete, easy to understand, and applies to all of the packaging offered into evidence by Plaintiffs, and all of the packaging sold by Plaintiffs since the early 1990s. Plaintiffs' evidence also supports its position that this unique combination of features—the yellow and black color combination on packaging for power tools and power tool accessories—is "likely to be perceived by consumers as being the stamp of" Black and Decker, *id.* at 381-82, because no other tool maker had used this particular color combination (prior to Defendants' alleged infringement) Further, Plaintiffs' evidence shows that they reinforced to consumers the distinguishing characteristic of their packaging—the yellow and black color scheme—by using the same color combination, and virtually no other color, on everything possible: tools, advertising, promotional materials, employees, racecars, and anything else they could paint yellow and black. There is nothing in *Landscape Forms* or any other case cited by Defendants that prohibits the Court from taking these facts into consideration in denying Defendants' motion for summary judgment on the trade dress infringement claim.

Third, Defendants assert that the Court "rejected [their] argument that Black & Decker should not be permitted to rely on evidence of secondary meaning as to its yellow and black colors on its power tools to assert a protectable family of packaging trade dress," and allowed Plaintiffs to proceed "without relying on specific packaging design elements or evidence of secondary meaning in those elements." [322] at 12. This was not the Court's holding. The Court was discussing the narrower question of whether Plaintiffs could rely on evidence of advertising and promotion of power tools to support the secondary meaning of their packaging trade dress. The Court found that precluding the use of such evidence (which also included ads and promotions that specifically featured the yellow packaging style, see [245] at 29-30) would unnecessarily limit "the inferences that a jury may (or may not) reasonably and logically draw from the evidence as a

11

whole," which included Plaintiff's use of yellow and black for years in all of tools, packaging, advertising, and promotional activities. [317] at 15. Put another way, the Court recognized the inability to silo the evidence of secondary meaning into discrete categories where, as here, at least one of the common formative components of the claimed family—the use of a yellow and black color scheme—is also used extensively in the trademark holder's other marks, products, advertisements, and promotional activities. Indeed, *AM General* recognized that "[w]hether a family of marks exists is an issue of fact" based on a number of relevant factors, including "the common formative component's distinctiveness, the family's use, advertising, promotion, and *inclusion in party's other marks*." *AM General*, 311 F.3d at 815 (emphasis added). Further, "[w]hether the party claiming a family of marks has used joint advertising and promotion in a manner designed to create an association of common origin may be pertinent." *Id*. Plaintiffs' evidence here is that their entire marketing strategy since 1992 has been to create an association between DeWalt and the color combination of yellow and black. The case law does not preclude Plaintiffs from telling this story to support their claim for trade dress infringement.

Looking at the larger record, however, does not absolve Plaintiffs of the need to demonstrate that all or most of the members of their proposed family of packaging trade dress had acquired secondary meaning when Defendants' "starburst" packaging entered the market. See *AM General Corp.*, 311 F.3d at 819. The Court believes that Plaintiffs have presented enough evidence to allow this question to go to a jury. To the extent Defendants disagree, this is a sufficiency of the evidence question not appropriate for interlocutory appeal. See *Ahrenholz*, 219 F.3d at 676.

Plaintiffs have presented evidence that their use of a yellow and black color combination on packaging generally—rather than on one particular packaging style—has an established secondary meaning, associating the packaging in the consumers' mind with the DeWalt brand. In

12

Plaintiffs' expert "Mr. Hollander's 'secondary meaning' survey, 72.7% of survey respondents asked, 'If you were shopping at a Home Depot, Lowe's, or another similar retail store and you saw a yellow and black packaged power tool or power tool accessory, would you associate that package with any particular company?', answered DeWalt/Black & Decker, while a net of 63.5% did so." [312] at 21. At trial, Defendants' Vice President of Marketing, Ms. Taylor, admitted that yellow and black packaging is DeWalt's "iconic look." [245] at 28. Plaintiffs' survey and Ms. Taylor's admission are relevant to both of the packaging styles that Plaintiffs had introduced (or at least arguably introduced) by the time Defendants' "sunburst" packaging entered the market—the predominately yellow style and the black bar style—since both share the distinctive formative components of the use of a yellow and black color scheme on power tool packaging.

Although Defendants do not delve into the evidence in any detail, they presumably would dispute that these statements about "yellow and black packaging" are specific enough to support a finding that the black bar package acquired secondary meaning in the relatively short time it was on the market (less than two years, at most, see [317] at 14) before Defendants began using their "sunburst" packaging. But demands for such particularized proof are premised not on any particular case law, but on an assumption that the two styles of packaging are so different that wholly separate evidence of secondary meaning for the predominately black package must be required. It is useful to keep in mind the actual appearance of the two styles:

13





The main difference between the two styles is that the use of yellow and black is reversed on certain panels of the box. The colors, fonts, and graphics are the same. If the first design had

already been known in the market for well over a decade, how long would it reasonably be expected to take a consumer familiar with the first package to also associate the second package with Black and Decker, as well? Does flipping the yellow and black on portions of the box create such a different visual impression that consumers would no longer make the connection? The Court cannot say that it would be beyond the bounds of reasonableness for a jury to conclude based on the similarity of the two packaging styles, along with the record evidence as a whole, that both styles of packaging (*i.e.*, two out of three, or "most," of the total three packaging styles in Plaintiffs' asserted family) had acquired secondary meaning by the time Defendants began using the "sunburst" packaging. The yellow packaging had been on the market nearly twenty years, and the black bar packaging could have been on the market for up to two years, depending on how disputed dates shake out at trial.

Looking to the rest of the record, Defendants never come to terms with the evidence of intentional copying, which is properly considered in evaluating secondary meaning. See *Spraying Sys.*, 975 F.2d at 393. Plaintiffs submitted evidence that, "with full knowledge that DeWalt had trademark and trade dress rights in the yellow and black color scheme and that DeWalt was the market leader in power tools, Defendants introduced their copycat yellow and black packaging to be sold side-by-side with DeWalt at retail." [317] at 15. In particular, they cite to testimony from Positec's Tom Duncan that Defendants were aware prior to March 2010 that the DeWalt brand used the colors yellow and black. See [313] at 39-40. Plaintiffs offer photos showing their DeWalt-packaged products in the black bar packaging intermingled and side by side in retail stores including Costco and Lowe's. See *id.* at 22-23. The testimony and photos support an inference that Defendants chose the "sunburst" design in order to create an association with DeWalt and profit off of DeWalt's brand recognition.

15

In addition, it is proper, in relation to both the yellow and black bar packaging styles, for the Court to consider Plaintiffs' place in the market at the time Defendants' introduced their "sunburst" packaging. See *Spraying Sys.*, 975 F.2d at 393. Plaintiffs offer essentially unrebutted evidence that prior to Defendants' introduction of their packaging, Plaintiffs were the only ones in the power tool market that used a yellow and black color combination on their power tools, accessories, and packaging. This was due to Plaintiffs' deliberate efforts: Plaintiffs launched "Operation Sudden Impact" with the express goal "to 'build awareness quickly and consistently' in the yellow and black color scheme." [313] at 36. Over the next twenty-plus years, Plaintiffs policed the market in order to maintain their exclusivity. See *id*. at 37.

For these reasons, the Court is not convinced that there are any reasonably disputed, pure legal issues to be resolved in an interlocutory appeal, much less any that would materially advance the ultimate resolution of the litigation without requiring the Federal Circuit to delve into the factual record. Therefore, Defendants' motion for interlocutory appeal [321] is denied.

**IV.    Conclusion**

For these reasons, Defendants' motion [321] for certification of interlocutory appeal under 28 U.S.C. § 1292(b) is denied. This case is set for a telephonic status hearing on February 3, 2021 at 10:00 a.m. The call-in information will be placed on the docket in a separate minute entry.

Dated: January 20, 2021

Robert M. Dow, Jr.
United States District Judge